OPINION
Appellant, Odraye G. Jones, appeals from the October 26, 2000 judgment entry of the Ashtabula County Court of Common Pleas denying his petition for post-conviction relief.
Appellant was indicted on November 26, 1997. He was charged with one count of aggravated murder in the shooting death of Ashtabula City Police Officer William D. Glover ("Officer Glover"). The indictment contained one death penalty specification pursuant to R.C. 2929.04(A)(3); two death penalty specifications pursuant to R.C. 2929.04(A)(6); and, one firearm specification pursuant to R.C. 2941.145.
On May 26, 1998, a jury found appellant guilty of aggravated murder and all four specifications as charged in the indictment. The sentencing phase of the trial commenced on June 2, 1998. On June 4, 1998, the jury returned a death sentence recommendation. The trial court imposed a sentence of death on appellant on June 8, 1998. Appellant appealed to the Supreme Court of Ohio, which affirmed the trial court's decision. Statev. Jones (2001), 91 Ohio St.3d 335.
Appellant filed a petition for postconviction relief on November 5, 1999. The trial court denied appellant's petition without an evidential hearing in its October 26, 2000 judgment entry. Appellant has filed a timely appeal of that judgment entry and makes the following assignments of error:
 "[1.] The trial court erred by dismissing appellant's postconviction relief petition, where he presented sufficient operative facts and supporting exhibits to merit an evidentiary hearing and discovery.
 "[2.] Ohio's postconviction procedures neither afford an adequate corrective process nor comply with due process and equal protection under the Fourteenth Amendment.
 "[3.] Considered together, the cumulative errors set forth in appellant's substantive grounds for relief merit reversal or remand for a proper postconviction process."
Appellant's first assignment of error addresses the merits of the twenty-five grounds for relief identified in his petition for postconviction relief. Within that first assignment of error, he raises nine separate issues. His argument is that in the context of those nine separate issues, he presented sufficient evidence to merit an evidential hearing on his petition.
A criminal defendant is not automatically entitled to a hearing on his petition for postconviction relief. State v. Kinley (1999),136 Ohio App.3d 1, 7. A hearing will be granted only if there are substantive grounds for relief set forth in the petition, or contained in the supporting affidavits, files and record of the case. Id. An alleged constitutional error that could have been raised and fully litigated on direct appeal is res judicata and cannot be litigated in the postconviction proceeding. Id. However, if the alleged error is supported by evidence outside the record and could not have been fully litigated on direct appeal, it is not subject to res judicata. Id.
 First issue: Ineffective assistance of counsel.
The first issue raised by appellant, which was raised in grounds for relief one, two, three, four, five, six, eight, nine, twelve, fourteen, fifteen, sixteen, seventeen, and eighteen, is that he did not have effective assistance of counsel during the penalty phase of his trial because his trial counsel failed to introduce evidence that would have humanized appellant, specifically testimony of his father and paternal grandmother that they were not part of appellant's life.
To demonstrate ineffective assistance of counsel in the context of a petition for postconviction relief, the appellant must "demonstrate that: 1) the performance of defense counsel was seriously flawed and deficient; and 2) the result of the appellant's trial or legal proceeding would have been different had defense counsel provided proper representation." State v. Girts (Nov. 22, 2000), Cuyahoga App. No. 77386, unreported, 2000 WL 1739293, at 4. See State v. Bradley (1989),42 Ohio St.3d 136, paragraphs two and three of the syllabus.
In the instant matter, while appellant's father and paternal grandmother did not testify as to their absence from appellant's life, the following testimony was introduced during the penalty phase of appellant's trial: appellant's foster mother, Theresa Lyons ("Theresa"), testified that appellant did not know who his father was until he was thirteen-years old; Charles See ("See"), a mitigation cultural specialist, testified that there was no male role model in appellant's life and that the lack of a father had a devastating affect on appellant; appellant's aunt, Carlotte Owen ("Carlotte") testified that appellant's mother did not want a child, that she did not have time for him, and that she spent her time in the streets drinking and doing drugs; she further testified that appellant did not cry when his mother died; Dr. James Eisenberg ("Eisenberg") testified that, as a baby, appellant's mother did not want to feed him, that appellant frequently went to the hospital because it was the only place where people took care of him, and that he gave up when his mother died.
In our view, additional evidence addressing the issue of lack of family support in appellant's life would have been cumulative of the evidence offered during the penalty phase of appellant's trial.
The trial court noted in its judgment entry that:
 "[T]he mitigating factors of personality disorders, exposure to a culture of violence, head trauma, the loss of trust with others, and the effect of [appellant's] mother's death were all extensively supported by the evidence presented on behalf of [appellant]. * * * [T]he mitigation evidence was presented through expert professional witness[es] [consisting] of [See], [Eisenberg], and [Kinney]. * * * Defense Counsel also called, as mitigation witnesses, [Theresa] * * *, with whom [appellant] resided; Lorraine Rapose, a school teacher, who had [appellant] as a student in seventh grade; [Carlotte], the maternal aunt of [appellant], who testified about his childhood and the background of his mother * * *; Lewis Lyons, the pastor of Apostle Faith Church * * *, who testified about [appellant] and his mother's background; and Queenie Kelly * * *, who testified about [appellant's] background and his devastation, both emotionally and psychologically, caused by his mother's death.
 "* * * [A]ll of the subject matters of [the testimony of potential witnesses not called by appellant's counsel], to-wit: the absent parenting of the biological father, the noninvolvement in [appellant's] life by his paternal grandmother, his drug use, gang membership, and emotional upset after the death of his mother, * * * Darlene Jones' drug use, criminal involvement, and abnormal home life, the cultural violence in which [appellant] was raised as well as the death of close friends and relatives and its effect upon his psychological and emotional development, the effect of the physical assault by Maceo Hull and how [it] caused [appellant] to be distrustful of others, and the general violence to which he was exposed were all covered and testified to by those witnesses that were called as mitigation witnesses."
Any additional evidence submitted by appellant would have been cumulative, and such cumulative evidence does not support substantive grounds for an ineffective assistance of counsel claim. State v. Combs
(1994), 100 Ohio App.3d 90, 98.
Further, when reviewing a claim of ineffective assistance of counsel, "a court must indulge in a strong presumption that the challenged action might be considered sound trial strategy." State v. Moore (1994),97 Ohio App.3d 137, 149, citing Strickland v. Washington (1984),466 U.S. 668, 689. The trial court noted in its judgment entry, denying appellant's petition that:
 "[I]t was competent trial strategy for Defense Counsel to present this evidence through expert witnesses and those other witnesses who were generally law abiding citizens of the community. The Court finds that a number of the witnesses that were not called, such as [appellant's] absent father, his uninvolved paternal grandmother, and those witnesses who are currently in prison were all subject to being impeached and discredited due to their noninvolvement in [appellant's] life and/or their criminal and drug use history. Counsel for [appellant] elected to present the mitigation evidence through witnesses who would most likely be credible in the eyes of the jury."
We agree with the trial court's assessment that appellant's trial counsel's decisions fall within the acceptable range of possible trial strategies.
In connection with this first issue, appellant also submits that his trial counsel was ineffective because he failed to obtain medical records demonstrating that appellant received follow-up care for a head injury suffered as a result of being struck by a hammer in the course of an assault by his cousin. Appellant asserts that this failure undermined the physical and psychological impact that the assault had on appellant.There was substantial testimony as to the nature and extent of appellant's injuries during the penalty phase. Theresa testified that, as a result of the assault, appellant was transported by helicopter to Metro Health Medical Center. Dr. John Kenny ("Dr. Kenny"), a neuropsychologist, testified that the head injury resulted in irritability and paranoia that lowered appellant's threshold for aggressive outbursts. See testified that the hammer attack left appellant greatly disillusioned because his cousin, who was also a close friend of appellant, inflicted the injury.
Also, regardless of whether appellant received follow-up treatment, the severity of his injuries from the hammer attack would have been minimized by the testimony of Dr. Robert White ("Dr. White"), the neurosurgeon who operated on appellant at Metro Health Medical Center. Dr. White testified that the surgery was "not a major operation", and that after the operation "we were looking at, for all practical purposes, * * * a perfectly healthy, young man." He concluded his testimony with the statement that "the degree of the injury itself regarding the brain borders on almost being insignificant." In view of this testimony, we conclude that the result of the penalty phase of appellant's trial would not have been different had defense counsel offered evidence that appellant did, in fact, receive follow-up treatment for his head injuries.
 Second issue: Brady violation.
Appellant argued in his seventh ground for relief that the state failed to produce police photographs of the 1994 hammer attack on appellant in violation of Brady v. Maryland (1963), 373 U.S. 83. In Brady, the Supreme Court held that "[s]uppression by the prosecution of evidence favorable to an accused who has requested it violates due process where the evidence is material either to guilt or to punishment, irrespective of good faith or bad faith of the prosecution." Id. at syllabus.
To establish that the prosecution violated Brady, appellant must demonstrate the following: "(1) the prosecution failed to disclose evidence upon request; (2) the evidence was favorable to the defense; and (3) the evidence was material." State v. Smith (Sept. 24, 1999), Trumbull App. No. 98-T-0097, unreported, 1999 WL 778376, at 5, citing Moore v.Illinois (1972), 408 U.S. 786.
The withholding of exculpatory or impeachment evidence constitutes aBrady violation only if it is "material." Id., citing United States v.Bagley (1985), 473 U.S. 667. On the subject of materiality, the Supreme Court has noted:
 "Bagley's touchstone of materiality is a `reasonable probability' of a different result, and the adjective is important. The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. A `reasonable probability' of a different result is accordingly shown when the government's evidentiary suppression `undermines confidence in the outcome of the trial.'" (Citations omitted.) Kyles v. Whitley
(1995), 514 U.S. 419, 434.
In the matter sub judice, appellant has failed to show that the photos at issue were gathered as evidence in this case. Instead, they were collected in 1994, in connection with the hammer attack upon appellant.
Even if the prosecution had knowingly withheld the photographs, they do not meet the standard of materiality set forth in Kyles, i.e., a reasonable probability of a different result. The state's witness, Dr. White, discussed at length the consequences of the attack. He testified that "some portions of [appellant's] skull * * * had been fragmented. These had not been driven into the brain, but they had been pushed against the brain. But still the membrane, the dura was protecting the brain. So these were removed. Almost like cooking." He further testified that "[w]e closed the membrane after irrigating the brain, very carefully elevated the membrane up against the bone so there wouldn't be any further bleeding, and simply closed the scalp. We did not put anything back, special kind of prosthesis or another piece of bone in the area that we operated on simply because the actual dimensions of this were not very large * * *." He also testified that appellant might have suffered a hairline fracture of his mandible, a fracture in the nasal area, and a fracture of one of his fingers.
In addition to Dr. White's testimony as to the physical consequences of the attack, the record also contains the testimony of Dr. Kenny as to the psychological consequences of the attack, appellant's lowered threshold for aggressive outbursts due to the irritability and paranoia that resulted from his head injury. In view of this extensive testimony, we do not believe that the introduction of photographs of appellant's injuries would have created a reasonable probability of a different result.
 Third issue: State withheld impeachment evidence.
In his tenth and eleventh grounds for relief, appellant argues that Anthony Barksdale ("Barksdale"), who was with appellant shortly before Officer Glover was killed, received favorable treatment from the state in exchange for testifying against appellant, and that the state failed to disclose this fact. However, in a March 6, 1998 letter to appellant's attorneys, the state noted that if Barksdale testified truthfully at appellant's trial, that fact would be considered by the trial court when it sentenced Barksdale on a charge of obstructing justice, to which he had entered a guilty plea. Therefore, appellant has failed to offer a factual predicate for his assertion that he did not have access to this information.
 Fourth issue: Ineffective assistance of counsel due to the breakdown in the attorney-client relationship.
In his thirteenth ground for relief, appellant contended that he did not receive effective assistance of counsel during his trial because a breakdown in the attorney-client relationship denied him his Sixth Amendment right to counsel. In an affidavit attached to his petition for postconviction relief, appellant stated: "I did not trust my trial attorneys * * *. It seemed like everytime (sic) I discussed something that would help my case, the prosecution would immediately know about it. My lack of trust in my trial attorneys affected my communication with them, and as a result, I was prevented from participating in my defense."
Appellant raised this issue on his direct appeal. In Jones,91 Ohio St.3d at 342-343, the Supreme Court noted that the trial court conducted an extensive inquiry into the relationship between appellant and his trial counsel, and that there was no violation of appellant's Sixth Amendment right to counsel. Because this issue was raised on appellant's direct appeal, he is barred by res judicata from raising it in his petition for postconviction relief. State v. Perry (1967),10 Ohio St.2d 175, paragraph nine of the syllabus.
 Fifth issue: Ineffective assistance of counsel for failure to properly conduct voir dire.
In his nineteenth ground for relief, appellant asserts that he was denied effective assistance of counsel because his trial attorneys failed to properly voir dire the jury on issues of race. Appellant asserts that this claim is supported by evidence outside of the trial record; however, the evidence outside the record consists of an affidavit by an attorney-expert whose opinions were based upon his review of the trial record.
In State v. Lawson (1995), 103 Ohio App.3d 307, the appellant submitted affidavits of an expert who testified for the defense at trial, two clinical psychologists, and one of the appellant's attorneys. The Twelfth Appellate District held that the affidavits did not constitute evidencedehors the record that overcame the res judicata bar. Id. at 315. That court was of the view that the affidavits constituted "repackaged information already available in the record in order to second-guess [the appellant's] trial counsel." Id.
The Tenth Appellate District adopted a similar position in State v.Scudder (1998), 131 Ohio App.3d 470. In that case, the court held that an affidavit offering an opinion based on evidence contained within the trial transcript does not constitute evidence outside the record. Id. at 477.
We concur with the Twelfth and Tenth districts that affidavits offering opinions based on a rehashing of the facts contained in the trial record do not constitute evidence outside the record. Therefore, appellant's nineteenth ground for relief is barred by res judicata.
 Sixth issue: Brady violation.
In his twentieth and twenty-first grounds for relief, appellant argues that the state violated Brady by withholding exculpatory evidence. Specifically, appellant offered the affidavit of Roger Perry ("Perry"), who stated that he overheard police officers discussing where the gun used in the murder of Officer Glover was found. According to Perry, the officers indicated that the gun was found near Officer Glover's body, rather than in the bushes at the scene of appellant's arrest.
We agree with the trial court's conclusion that "[a]lthough the State of Ohio may be deemed to have constructive knowledge of the police investigation, it is not deemed to have constructive knowledge of everything that every unidentified police officer may have to say about the investigation." In short, no Brady violation occurred because there is no suggestion that the state concluded from its investigation that the gun was found near Officer Glover's body.
 Seventh issue: Ineffective assistance of counsel for failure to properly prepare expert witnesses.
Appellant contended in his twenty-second ground for relief that he received ineffective assistance of counsel because his trial attorneys did not properly prepare their expert witnesses. Once again, appellant failed to adduce any evidence outside of the trial record that was contained in those affidavits. The affidavits offered by appellant consist of a review of the trial record by two experts. Such a review could have been conducted prior to appellant's direct appeals. Therefore, the issues raised in those affidavits are barred by resjudicata for purposes of appellant's petition for postconviction relief. Also, we would reiterate that affidavits offering opinions based on a re-examination of facts found within the trial record do not constitute evidence outside the record. Scudder, 131 Ohio App.3d at 477; Lawson,103 Ohio App.3d at 315.
 Eighth issue: Trial court failed to order a psychological evaluation.
In his twenty-third ground for relief, appellant argued that he was unable to assist with his defense and understand the nature and objective of the proceedings against him. This issue could have been raised in appellant's direct appeal. Once again, appellant relied upon expert affidavits, which presented no new information to overcome res judicata. However, the affidavits did not contain any evidence outside the record.
 Ninth issue: Trial court erred in denying appellant's motion for a change of venue.
Finally, in his twenty-fourth and twenty-fifth grounds for relief, appellant asserted that the trial court denied him a fair trial by overruling his motion for a change of venue. Appellant raised this issue on his direct appeal. Jones, 91 Ohio St.3d at 339. Further, appellant did not present any evidence in his petition for postconviction relief that was not available at the time he filed his appeal. Therefore, these grounds for relief are also barred by res judicata.
For the reasons stated above, appellant's first assignment of error is without merit. Appellant's second assignment of error attacks the constitutionality of Ohio's postconviction relief procedures, arguing that because it denies petitioners access to traditional discovery methods, it poses a nearly insurmountable burden of collecting evidence to indigent petitioners.
The issue of whether Ohio's postconviction system violates due process was addressed by the United States District Court for the Southern District of Ohio in Jamison v. Collins (S.D.Ohio 1998), 100 F. Supp.2d 521. In Jamison, the petitioner argued that Ohio's postconviction system was inadequate because it did not provide an opportunity to identify, investigate, or prove constitutional violations. Id. at 567. The Jamison
court rejected those arguments and ruled that Ohio's system did not violate due process. Id. The court noted that although Ohio has imposed strict standards for granting an evidential hearing and discovery pursuant to a petition for postconviction relief, those standards were "supported by reasonable policy reasons, such as the finality of judgments, judicial economy, and the intention that postconviction review not be a second appeal * * *." Id. at 568.
Similarly, the United States District Court for the Northern District of Ohio has held that Ohio's postconviction system is constitutional.Dennis v. Mitchell (N.D.Ohio. 1999), 68 F. Supp.2d 863, 885. It would be unconstitutional if it precluded an effective state remedy against unconstitutional convictions. Id. However, "Ohio's system does not preclude a remedy; it merely forces a petitioner to prove he or she is entitled to a remedy." Id.
Appellant also posits that Ohio's postconviction system is a violation of the constitutional guarantees of equal protection propounded in the United States and Ohio Constitutions. Those guarantees "require that all similarly situated individuals be treated in a similar manner. * * * In other words, laws are to operate equally upon persons who are identified in the same class." State ex rel. Patterson v. Indus. Comm. of Ohio
(1996), 77 Ohio St.3d 201, 204. Appellant has failed to establish a factual predicate that would suggest he is receiving disparate treatment. Therefore, we are unable to discern an equal protection argument in his brief.
In view of the foregoing, we find no merit in appellant's second assignment of error.
In his third assignment of error, appellant suggests that the cumulative errors on the part of the trial court merit reversal of this matter. However, we have not identified any errors on the part of the trial court in its handling of appellant's petition. Consequently, appellant's third assignment of error also lacks merit.
For the foregoing reasons, the judgment of the Ashtabula County Court of Common Pleas is affirmed.
O'NEILL, P.J., NADER, J., concur.