DECISION
Defendant-appellant, Kareem M. Jackson, was convicted in 1998 of aggravated murder with death penalty specifications, kidnapping, aggravated burglary and aggravated robbery. Appellant was sentenced to death. The convictions and sentences were affirmed on direct appeal, where appellant was represented by different counsel. See State v. Jackson (2001), 92 Ohio St.3d 436. Appellant now appeals from a judgment of the Franklin County Court of Common Pleas denying his petition for postconviction relief.
The evidence at trial demonstrated that, in the early morning hours on March 25, 1997, Malaika Williamson drove appellant, Michael Patterson, Derrick Boone and a man known as "Little Bee" to an apartment where the men had planned to commit a robbery. Antorio Hunter, Terrance Walker, Nikki Long and Becky Lewis were inside the apartment. Appellant and Little Bee knocked on the door, and Hunter invited them inside. Appellant and Little Bee purchased some marijuana.
After the purchase, Patterson and Boone burst into the apartment armed with shotguns. The men searched the apartment for drugs and money. Lewis testified that appellant struck her in the head with a handgun and led her into the kitchen, where she and Long waited until the perpetrators left the apartment. Boone testified that appellant ordered Hunter and Walker to lie face down next to each other on the living room floor. According to Boone, appellant stated that he had to kill Hunter and Walker because they knew his name. Boone testified that appellant shot each man in the back of the head. Three days after the shootings, appellant's girlfriend, Ivana King, told police that appellant admitted he had "done two people."
On April 19, 1999, appellant filed a petition for postconviction relief pursuant to R.C. 2953.21. In his petition, appellant presented 26 grounds for relief, summarized as follows:
 1. Trial counsel failed to voir dire prospective jurors on the topic of race.
 2. Trial counsel failed to voir dire prospective jurors regarding the fact that the murder took place in a drug house.
 3. Trial counsel failed to properly rehabilitate jurors during the death-qualification portion of the voir dire and failed to challenge a juror for cause.
 4. Trial counsel failed to file a motion to suppress evidence of guns.
 5. Trial counsel failed to move the trial court for appointment of an expert eyewitness identification expert.
 6. Trial counsel failed to adequately cross-examine Derrick Boone.
7. Trial counsel failed to impeach Ivana King.
 8. Trial counsel failed to object to introduction of testimony regarding a telephone call between appellant and Ivana King.
9. Trial counsel failed to present alibi evidence.
 10. Trial counsel failed to adequately prepare trial witnesses.
 11. Trial counsel failed to adequately investigate mitigation factors.
 12. Trial counsel failed to adequately prepare mitigation witnesses.
 13. Trial counsel failed to present testimony from a cultural expert.
 14. Trial counsel failed to present testimony from a psychological expert.
 15. Trial counsel failed to present all relevant mitigation evidence.
 16. During trial, Juror Maureen Huddle discovered that her garage door was open and two men were standing in her driveway. Although the trial judge interviewed Huddle, the judge failed to admonish her that she should not discuss this occurrence with other jurors.
 17. The trial court failed to conduct an adequate hearing regarding Juror Huddle's garage door incident.
 18. Trial counsel failed to inquire into the extraneous influence upon other jurors of Juror Huddle's garage door incident.
 19. Trial counsel was ineffective during closing argument in the mitigation phase of trial.
 20. Postconviction relief provides an inadequate corrective process.
 21. Ohio Crim.R. 35(A) unconstitutionally restricts the presentation of a postconviction petition by imposing page limits.
 22. The death penalty is disproportionately imposed upon racial minorities and/or defendants accused of killing white victims.
 23. The death penalty by electrocution violates constitutional rights to due process and equal protection and the constitutional right to protection from cruel and unusual punishment.
 24. The death penalty by lethal injection violates constitutional rights to due process and equal protection and the constitutional right to protection from cruel and unusual punishment.
 25. African-Americans were systematically excluded from appellant's prospective petit jury panel, in violation of appellant's constitutional rights.
 26. The cumulative effect of errors denied appellant's constitutional rights.
Appellant attached numerous affidavits in support of his postconviction petition. Several experts provided opinions. Joann Jolstad, an attorney with experience defending death penalty cases, provided a critique of appellant's trial team. Dr. Harvey Shulman, a member of the psychology faculty at the Ohio State University, provided his opinion about the shortcomings in the eyewitness testimony offered at trial by Becky Lewis and Nikki Long. Dr. Hugh Turner, a psychologist, concluded that appellant's cognitive, emotional and cultural development were poorly represented to the jury. Dr. Whittaker, also a psychologist, testified by affidavit about the influence of cultural factors upon appellant. Dorian Hall, a social worker, opined that the mitigation evidence would have been stronger if it included additional witnesses who could have corroborated information, added details and provided psychosocial history information. Kathleen Burch, a psychologist who had been retained to provide a psychological assessment in support of the mitigation proceedings, opined that she might have been able to obtain a valid and comprehensive understanding of appellant if she had more time to establish a relationship with him.
Appellant also attached to his postconviction petition affidavits from fact witnesses. Ivana King, the witness who rented the apartment in which guns were found, testified by affidavit that, had she been asked at trial, she would have testified that Derrick Boone knew where to find a key to her apartment. William Woods, appellant's cousin, stated by affidavit that he could have testified that Ivana King was very jealous of appellant's interactions with other women. James Cahill, a juror at appellant's trial, stated by affidavit that: (1) appellant's trial counsel did not clearly convey that Boone had a spare key to the apartment where some of the guns were found; (2) trial counsel did not present mitigation evidence on a variety of subjects; and (3) Juror Huddle informed the other jurors during the trial that she had discovered that her garage door was open and two men were standing in her driveway. Connie Smith, appellant's aunt, testified that, when she met with appellant's trial team prior to appearing as a mitigation witness, the trial team did not explain how she should testify. Appellant's parents, Robbie Jackson Ellison and Michael Taylor, likewise testified by affidavit that they were not instructed by appellant's trial team about the specifics of their mitigation testimony.
On June 18, 2001, the trial court denied appellant's petition for postconviction relief without conducting an evidentiary hearing. The trial court expressly denied appellant's 1st, 2nd, 3rd, 4th, 5th, 6th, 7th, 8th, 9th, 10th, 11th, 12th, 13th, 14th, 15th, 18th, and 19th grounds for postconviction relief on the basis that appellant had not established that he was denied effective assistance of counsel. The trial court denied appellant's 6th, 7th, 8th, 18th and 19th
grounds for relief for the additional reason that those grounds are barred by the doctrine of res judicata. The trial court denied appellant's 16th and 17th grounds for relief based upon its conclusion that appellant had not provided evidence of misconduct by Juror Maureen Huddle or by any other juror.
Appellant now asserts the following assignments of error:
ASSIGNMENT OF ERROR NO. 1
 THE TRIAL COURT ERRED IN DISMISSING APPELLANT'S CLAIMS ON THE BASIS OF RES JUDICATA IN VIOLATION OF APPELLANT'S RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.
ASSIGNMENT OF ERROR NO. 2
 THE TRIAL COURT ERRED IN DISMISSING APPELLANT'S POSTCONVICTION PETITION, WHERE HE PRESENTED SUFFICIENT OPERATIVE FACTS TO MERIT AN EVIDENTIARY HEARING AND DISCOVERY.
ASSIGNMENT OF ERROR NO. 3
 OHIO'S POSTCONVICTION PROCEDURES NEITHER AFFORD AN ADEQUATE CORRECTIVE PROCESS NOR COMPLY WITH DUE PROCESS OR EQUAL PROTECTION UNDER THE FOURTEENTH AMENDMENT.
ASSIGNMENT OF ERROR NO. 4
 THE CUMULATIVE ERROR OF APPELLANT'S SUBSTANTIVE CLAIMS MERIT REVERSAL OR REMAND FOR A PROPER POSTCONVICTION PROCESS.
A postconviction proceeding "is not an appeal of a criminal conviction but, rather, a collateral civil attack on the judgment." State v. Calhoun (1999), 86 Ohio St.3d 279, 281. In order to obtain postconviction relief, appellant must demonstrate that "there was such a denial or infringement of [his] rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States." R.C. 2953.21(A)(1).
 We consider simultaneously appellant's first and second assignments of error thereby addressing all the arguments pertaining to each ground for relief.
 By his first assignment of error, appellant argues that the trial court erred when it dismissed appellant's 6th, 7th, 8th, 18th and 19th grounds for postconviction relief on the basis that these grounds are barred by res judicata. Appellant contends that the doctrine of res judicata should not apply because his 6th, 7th, 8th, 18th and 19th
grounds, which are predicated upon appellant's theory that his trial counsel was ineffective, are supported by evidence that was not contained in the trial court record. By his second assignment of error, appellant contends that the trial court erred in dismissing appellant's postconviction petition without allowing discovery and conducting an evidentiary hearing. Appellant contends that he presented sufficient facts to warrant discovery and a hearing as to his 1st, 2nd, 3rd, 4th, 5th, 6th, 7th, 8th, 9th, 10th, 11th, 12th, 13th, 14th, 15th, 16th, 17th, 18th, 19th, 22nd, 23rd, 24th and 25th
grounds for postconviction relief.[1]
The doctrine of res judicata provides that:
 "* * * [F]inal judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment of conviction, or on an appeal from that judgment." (Emphasis sic.) [State v. Szefcyk (1996), 77 Ohio St.3d 93, 95.]
Regarding claims of ineffective assistance of trial counsel in postconviction proceedings, the Ohio Supreme Court has stated that where a defendant, represented by different counsel on direct appeal, "fails to raise therein the issue of competent trial counsel and said issue could fairly have been determined without resort to evidence dehors the record, res judicata is a proper basis for dismissing defendant's petition for postconviction relief." State v. Cole (1982),2 Ohio St.3d 112, syllabus.
 To overcome the barrier of res judicata, a petitioner must attach evidence dehors the record that is "competent, relevant and material" and that was not in existence or available for use at the time of the trial. State v. Gipson (1997), Hamilton App. No. C-960867. Such evidence "must meet some threshold standard of cogency; otherwise it would be too easy to defeat [the doctrine of res judicata] by simply attaching as exhibits evidence which is only marginally significant and does not advance the petitioner's claim beyond mere hypothesis and a desire for further discovery." State v. Lawson (1995), 103 Ohio App.3d 307, 315.
 "An evidentiary hearing is not automatically required for every petition for postconviction relief." State v. Chafin (1999), Franklin App. No. 98AP-865. "In order to obtain an evidentiary hearing on a motion for postconviction relief, the petitioner must show that there are substantive grounds for relief that would warrant a hearing based upon the petition, the supporting affidavits, and the files and records in the case." State v. Watson (1998), 126 Ohio App.3d 316, 324. R.C. 2953.21(C) permits a trial court to dismiss a petition for postconviction relief without a hearing if the petitioner fails to produce evidentiary documents establishing constitutional error of a magnitude rendering his conviction constitutionally void or voidable. Calhoun, at 282. A petition for postconviction relief may also be denied without an evidentiary hearing when the claims raised are barred by the doctrine of res judicata. State v. Perry (1967), 10 Ohio St.2d 175, paragraph nine of the syllabus.
In the instant matter, appellant has argued, among other things, that he is entitled to an evidentiary hearing because his trial counsel was ineffective. In State v. Ballew (1996), 76 Ohio St.3d 244, 255, the Ohio Supreme Court outlined the following test regarding ineffective assistance of counsel:
 Reversal of a conviction or sentence based upon ineffective assistance requires (a) deficient performance, "errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment," and (b) prejudice, "errors * * * so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland v. Washington (1984), 466 U.S. 668, 687. * * *
The defendant must show that counsel's representation fell below an objective standard of reasonableness. Strickland v. Washington (1984),466 U.S. 668, 687-688. The defendant must also prove that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id. at 694. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" Id. at 689. Furthermore, "the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.'" Id.
 "In reviewing whether the trial court errs in denying a petitioner's motion for postconviction relief without a hearing, the appellate court applies an abuse of discretion standard." State v. Chafin (1999), Franklin App. No. 98AP-865. Abuse of discretion is more than an error of law or judgment; it implies that the court's attitude was unreasonable, arbitrary or unconscionable. State v. Xie (1992), 62 Ohio St.3d 521, 527. We address each of appellant's grounds for postconviction relief in turn and conclude that the trial court did not err when it overruled, without an evidentiary hearing, appellant's grounds for postconviction relief.
 The trial court did not abuse its discretion when it overruled, without a hearing, appellant's first ground for postconviction relief, in which appellant argued that his trial counsel failed to adequately question prospective jurors during voir dire concerning their views about race. Appellant's claims regarding trial counsel's alleged inadequate performance in voir dire are supported by citations to the trial transcript and could have been raised on direct appeal. The record demonstrates that appellant's trial counsel asked the court to include five specific questions about racial bias in the written juror questionnaire and, although the court declined to include the questions for fear that they would unnecessarily focus the juror's attention on irrelevant issues, the court indicated that defense counsel would be allowed to ask questions about racial bias during the general voir dire. Although defense counsel declined the opportunity to ask specific questions regarding racial bias during general voir dire, the record demonstrates that defense counsel reviewed jurors' answers to the written questionnaires for the specific purpose of detecting whether the answers indicated racial bias.
 Appellant argues that he is entitled to an evidentiary hearing because attorneys Joann Jolstad and Kwaw David Whittaker opined by affidavit that trial counsel should have expressly questioned jurors about racial bias during the general voir dire and that it may have been important for counsel to explore racial bias. We conclude that, although these affidavits are outside the original record, they are insufficient to warrant a hearing. "To overcome the res judicata bar, the evidence must show that the petitioner could not have appealed the constitutional claim based on the information in the original trial record." State v. Combs (1994), 100 Ohio App.3d 90, 97. Attorneys Jolstad and Whittaker base their opinions on their review of information in the record, and appellant advances no reason why their legal conclusions could not have been advanced upon direct appeal. Moreover, at least two Ohio appellate courts have concluded that affidavits of defense attorneys or experts reviewing ex post facto the record or the performance of trial counsel are not evidence outside the record sufficient to warrant an evidentiary hearing. See State v. Landrum (1999), Ross App. No. 98 CA 2401; State v. Zuern (1991), Hamilton App. No. C-9000481.
 The trial court did not abuse its discretion when it overruled, without a hearing, appellant's second ground for postconviction relief, in which appellant argued that his trial counsel failed to question prospective jurors about the fact that the murder took place in a drug house. As with the issue of race, appellant's claims regarding trial counsel's alleged inadequate performance in voir dire are supported by citations to the trial transcript and could have been raised on direct appeal.
 Moreover, although appellant criticizes his trial counsel for questioning jurors regarding drugs on only two occasions, the Ohio Supreme Court has stated that lawyers "need not repeat questions about topics already covered by * * * opposing counsel." See State v. Watson (1991), 61 Ohio St.3d 1, 13. The record demonstrates several additional instances where the prosecutor questioned prospective jurors in an effort to ascertain whether they could give appellant a fair trial even though the case involved drugs.
 Appellant argues that two affidavits provided adequate evidence to warrant an evidentiary hearing regarding the effective assistance of trial counsel on voir dire regarding drugs. Appellant cites to the affidavit of Joann Jolstad, who testified that trial counsel inadequately questioned jurors regarding drugs. Jolstad's opinion, however, is based entirely upon her review of evidence in the record and, as we have noted, does not compel an evidentiary hearing.
 Appellant also cites to the affidavit of James Cahill, a juror at appellant's trial. By affidavit, Cahill testified that another juror, Maureen Huddle, cried in front of fellow jurors because she was upset because she had received bizarre telephone calls and had returned home from jury duty one day to find that her garage door was open. Appellant argues that one could conclude from Cahill's affidavit that Huddle believed these incidents were related to drug and gang activity.
 We conclude that Cahill's affidavit is not competent, relevant or material evidence sufficient to warrant an evidentiary hearing. Cahill's affidavit does not meet the requirements of Evid.R. 606(B), which provides as follows:
 Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental process in connection therewith. A juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear on any juror, only after some outside evidence of that act or event has been presented. However, a juror may testify without the presentation of any outside evidence concerning any threat, any bribe, any attempted threat or bribe, or any improprieties of any officer of the court. His affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying will not be received for these purposes.
Cahill's testimony regarding the alleged impact of the incidents involving Huddle was barred by Evid.R. 606(B) because it is being offered as evidence of the effect of Huddle's statement and behavior upon the mind or emotions of the jurors. There was no outside evidence that Huddle ever indicated or implied that the incidents were related to drug or gang activity, or that Huddle believed the incidents were in any way related to appellant. Furthermore, trial counsel and the court questioned Huddle on the record and ascertained that she did not believe that the telephone calls or incident with her garage door were connected to appellant. As this colloquy was part of the record, arguments pertaining to the incidents involving Huddle are barred by res judicata.
 The trial court did not abuse its discretion when it overruled, without a hearing, appellant's third ground for postconviction relief, by which appellant argued that trial counsel failed to properly rehabilitate jurors during the death qualification portion of voir dire. We conclude that this issue is barred by res judicata, as trial counsel's voir dire is contained in the record.
 The trial court did not abuse its discretion when it overruled, without a hearing, appellant's fourth ground for postconviction relief, in which appellant argued that his trial counsel were ineffective because they failed to file a motion to suppress evidence of guns recovered from Williamson's and King's apartments. We conclude that this argument could have been advanced on direct appeal and is, therefore, barred by the doctrine of res judicata. Moreover, we conclude that appellant failed to establish that he has standing to challenge the searches of King's apartment or the methods by which the police persuaded Williamson to produce the gun. Fourth Amendment rights are personal and may not be vicariously asserted. Alderman v. United States (1969), 394 U.S. 165, 174. A defendant bears the burden of proving that a search was illegal and that he had a legitimate expectation of privacy in the area searched. Rawlings v. Kentucky (1980), 448 U.S. 98, 104. Accordingly, because he has not demonstrated standing, appellant has not established that the results of his trial would have been different had trial counsel filed the motion.
 The trial court did not abuse its discretion when it overruled, without a hearing, appellant's fifth ground for postconviction relief. Appellant argued that trial counsel was ineffective because they failed to move the trial court for appointment of an expert who could cast doubt on the eyewitness identifications by Nikki Long and Becky Lewis. In support of this ground, appellant attached the affidavit of Dr. Harvey Shulman, who identified factors that could have impacted the reliability and accuracy of Long and Lewis' identification of appellant.
 "A decision by defense counsel not to call an expert witness generally will not sustain an ineffective assistance of counsel claim." State v. Price (2001), Franklin App. No. 00AP-1434. See State v. Thompson (1987), 33 Ohio St.3d 1, 10-11. Moreover, we conclude that appellant has not established that trial counsel's failure to call an expert identification witness caused prejudice. The evidence upon which the jury convicted appellant was not limited to the identifications by Long and Lewis. Rather, the jury also heard testimony from Derrick Boone and Malaika Williamson, who both stated that appellant went inside the apartment. Furthermore, Ivana King testified that appellant admitted he had "done two people" and later asked her to invent an alibi for him. Appellant has failed to satisfy the Strickland standard for ineffective assistance with regard to trial counsel's decision not to call an expert identification witness.
 The trial court did not abuse its discretion when it overruled, without a hearing, appellant's sixth ground for relief, in which appellant argued that trial counsel failed to adequately cross-examine Derrick Boone. Appellant contends that his counsel failed to ask Boone about his access to King's apartment where the police seized weapons. Appellant suggests that cross-examination on this issue would have demonstrated that Boone could have planted the guns in order to incriminate appellant.
 We conclude that this ground is barred by the doctrine of res judicata, as the effectiveness of cross-examination was a matter that could have been raised upon direct appeal. In an effort to overcome res judicata, appellant cites to the affidavit of Attorney Joann Jolstad. In her affidavit, however, Jolstad makes no mention of trial counsel's cross-examination of Derrick Boone. Appellant also cites to the affidavits of Ivana King, who testified that she told appellant's counsel that Boone had access to her apartment, and Juror James Cahill, who testified that defense counsel did not inform the jury that Boone had access to King's apartment. The evidence, however, demonstrates that trial counsel indeed covered this ground in its examination of Ivana King:
 Q. Regarding Derrick Boone, we'll call him Red, that's what you're more familiar with.
A. Thank you.
 Q. Where did Red stay? What room did he stay in at the apartment?
A. He slept downstairs in the front room.
* * *
Q. Did [Boone] have a key to the apartment?
A. Yes.
 Q. So he had access to the apartment while he was living there for those two or three weeks or whatever?
A. Yes. [Tr. at 139-140.]
Accordingly, we conclude that appellant's sixth ground for relief is barred by res judicata and for the additional reason that appellant has failed to demonstrate ineffective assistance of counsel.
 The trial court did not abuse its discretion when it overruled, without a hearing, appellant's seventh ground for relief, by which appellant argued that trial counsel should have questioned Ivana King about appellant's infidelity and about King's bias against appellant. Appellant further argues that trial counsel was ineffective because he failed to question William Woods, appellant's cousin, about King's jealousy of appellant. By affidavit, Woods states that he would have testified that King was jealous of appellant's interactions with other women and questioned his behavior.
 We conclude that this ground for relief is barred by the doctrine of res judicata, as the content of trial counsel's examinations of witnesses is a matter of trial record. Furthermore, we conclude that appellant failed to demonstrate that trial counsel was ineffective. Contrary to appellant's assertion, trial counsel questioned King about appellant's other relationships and expressly asked about whether King knew if appellant was involved with Malaika Williamson during the time at issue. With regard to Woods' affidavit, there is no indication that it is based upon personal knowledge and not upon information from appellant and, accordingly, appellant has not demonstrated that Woods could have provided admissible evidence. See State v. Moore (1994), 99 Ohio App.3d 748, 755-756. Finally, we note that, in addition to King's testimony, the jury heard from several additional witnesses who testified that appellant was in the house when the crimes were committed.
 The trial court did not abuse its discretion when it overruled, without a hearing, appellant's eighth ground for postconviction relief, by which appellant argued that trial counsel failed to object to the introduction of testimony regarding a telephone call between appellant and Ivana King. King had testified that appellant threatened her and asked her to change her statement to the police. We conclude that this ground for relief is barred by the doctrine of res judicata, as it could have been raised upon direct appeal.
 The trial court did not abuse its discretion when it overruled, without a hearing, appellant's ninth and tenth grounds for relief, in which appellant argued that his trial team was deficient because it failed to present alibi evidence and to adequately prepare trial witnesses. In support of these grounds, appellant cites to the affidavit of William Woods. Woods testified by affidavit that, because he had not been adequately prepared by trial counsel, he was not able to clearly answer questions about his whereabouts on the night of the shootings, resulting in ambiguity in his trial testimony.
 We conclude that appellant has not demonstrated ineffective assistance of counsel. Woods' affidavit does not supply an alibi for appellant, as nowhere in this affidavit does he state that appellant was with him at the time that the crimes were committed. Although Woods may have been confused at trial about his own whereabouts on the night at issue, it is appellant's whereabouts that are material.
 The trial court did not abuse its discretion when it overruled, without a hearing, appellant's 11th, 12th, 13th, 14th, 15th and 19th grounds for postconviction relief. By these grounds, appellant argued that his trial counsel was ineffective because they failed to adequately investigate mitigation factors and failed to adequately present all relevant mitigation evidence.
 In support of these grounds for relief, appellant cites to the affidavits of several experts. Dr. Whittaker testified by affidavit that race and racism played significant roles in shaping appellant, and that testimony from a cultural expert would have helped to humanize appellant to the jury. Dr. Burch, a psychologist, stated in an affidavit that appellant was not cooperative in a clinical interview for mitigation purposes because defense counsel failed to properly apprise appellant about the importance of the interview, and failed to provide Dr. Burch with sufficient background information. Dr. Hugh Turner, another psychologist, opined that appellant's cognitive, emotional and cultural development were poorly represented to the jury.
 Appellant also cites to affidavits from several fact witnesses. Juror James Cahill testified that he would have liked to have heard mitigation evidence regarding appellant's father's substance abuse, domestic violence in appellant's home, appellant's grandmother's role in his life, and cultural issues faced by appellant. Appellant also cites to affidavits from several family members and friends, who testified that the defense team failed to interview them or inadequately interviewed them for trial.
 It is incumbent upon trial counsel to investigate mitigating circumstances in order to make informed tactical decisions about which information would be most helpful to the client's case. See State v. Johnson (1986), 24 Ohio St.3d 87, 90. To justify postconviction relief based upon counsel's tactical choices, however, the court must find that those choices were so bad that counsel's performance fell below a reasonable standard of professional care. State v. Bradley (1989), 42 Ohio St.3d 136.
 By his 11th and 12th grounds for relief, appellant contends that trial counsel failed to adequately investigate mitigation factors and prepare mitigation witnesses. Contrary to appellant's assertion, the record demonstrates that trial counsel employed an investigator and a psychologist to assist in preparing a mitigation strategy and interviewed prospective witnesses. With the exception of Drs. Whittaker and Turner, trial counsel interviewed each affiant upon whom appellant relies in his petition for postconviction relief. Although appellant has provided affidavits of fact witnesses who criticize counsel for failing to review questions and answers with them prior to their testimony, appellant has cited no case law which requires such measures and we conclude that counsel may have decided as a matter of trial tactics to avoid the appearance that testimony had been rehearsed.
 By his 13th, 14th, 15th and 19th grounds for relief, appellant contends that trial counsel failed to present mitigation testimony pertaining to appellant's psychological, social and cultural hardships. By their affidavits, Drs. Turner and Whittaker contend that trial counsel should have argued in mitigation that psychological, sociological and cultural factors influenced appellant's actions.
 Evidence offered in mitigation phase of trial, however, undermines these theories. Appellant's mother testified that appellant grew up in a relatively stable household where his mother tried to provide for his physical and emotional needs. Mitigation evidence also demonstrated that appellant had a strong religious foundation, attending church, Sunday school and Bible study for most of his youth and adolescence and competing on a national level for the church's Bible bowl team.
 Although appellant now argues that his life was fraught with domestic violence, drug abuse, chaos and neglect, the record belies this contention. Appellant's mother, for example, testified that she was physically abused by appellant's father, but she stated that appellant was a very small child when the abuse occurred. We also note that trial counsel's ability to present psychological evidence was impeded by appellant's failure to cooperate with Dr. Burch, the psychologist retained by the defense team to assist with the development of mitigation evidence. Dr. Burch noted that appellant was evasive and provided unusable responses to testing, undermining Dr. Burch's ability to develop useful evidence.
 In light of this evidence, trial counsel pursued a tactical strategy of emphasizing appellant's positive attributes in mitigation, rather than focusing on negative influences. We conclude that appellant has not established that this counsel's tactics with respect to mitigation were unreasonable.
 The trial court did not abuse its discretion when it overruled, without a hearing, appellant's 16th, 17th and 18th grounds for postconviction relief. By these grounds, appellant argued that the trial court failed to conduct an adequate hearing after Juror Maureen Huddle reported that she had discovered that her garage door was open and two men were standing in her driveway. Appellant further argued that the judge failed to admonish her that she should not discuss this incident with other jurors. In support of these grounds for relief, appellant attached the affidavit of Juror James Cahill, who asserts that Juror Huddle informed the jurors of the incident prior to the mitigation phase of the proceedings.
 The record reflects that Huddle informed the court of the incident and that the court and counsel interviewed her in an effort to ascertain the circumstances. Juror Huddle informed the court that she did not believe there was any connection between the incident and appellant's trial, and she stated that the incident would have no impact on her capacity to serve as a juror. Even assuming that Cahill's affidavit is admissible, in it Cahill says nothing about the impact of Huddle's statements upon the jury and it does not add any material information. We conclude that the incident involving Huddle was part of the trial record, and any arguments pertaining to this incident could have been addressed at trial or on direct appeal. Accordingly, appellant's 16th, 17th and 18th grounds for relief are barred by the doctrine of res judicata.
 The trial court did not abuse its discretion when it overruled without a hearing appellant's 22nd ground for postconviction relief, in which appellant argued that the death penalty is disproportionately imposed upon racial minorities and/or defendants accused of killing white victims. In support of this ground for relief, appellant cites to statistical evidence of disproportionate impact. The Ohio Supreme Court has stated, however, that "[t]here can be no finding that the death penalty is imposed in a discriminatory fashion absent a demonstration of specific discriminatory intent." State v. Zuern (1987), 32 Ohio St.3d 56, syllabus, certiorari denied (1988), 484 U.S. 1047. "Statistics indicative of a disparate impact alone are insufficient to establish a claim of discriminatory enforcement of the death penalty." State v. Jones (2000), Hamilton App. No. C-990813. Appellant has not provided evidence of discriminatory intent sufficient to warrant an evidentiary hearing and the trial court did not err in failing to provide a hearing.
 The trial court did not abuse its discretion when it overruled appellant's 23rd and 24th grounds for postconviction relief. By these grounds, appellant argued that execution by electrocution or lethal injection violates constitutional rights to due process and equal protection and the constitutional right to protection from cruel and unusual punishment. In support of these grounds, appellant attaches several affidavits regarding the death penalty. Appellant's 23rd ground for relief regarding electrocution is moot, as the current version of R.C. 2949.22, which became effective on November 21, 2001, provides for execution in Ohio only by lethal injection. With regard to his 24th ground for relief, the Ohio Supreme Court has previously upheld, as constitutional, execution by lethal injection. See State v. Carter (2000), 89 Ohio St.3d 593, 608.
 The trial court did not abuse its discretion when it overruled appellant's 25th ground for postconviction relief, in which appellant argued that African-Americans were systematically excluded from appellant's prospective petit jury panel. In support of this ground, appellant attached his own affidavit, in which he stated that the jury venire contained five African-Americans. We conclude that the evidence advanced in support of this ground was available for use at the time of trial. Accordingly, we conclude that this argument could have been advanced at trial or on direct appeal and is, therefore, barred by the doctrine of res judicata.
 For the foregoing reasons, we conclude that the trial court did not abuse its discretion when it overruled, without an evidentiary hearing, appellant's 1st, 2nd, 3rd, 4th, 5th, 6th, 7th, 8th, 9th, 10th, 11th, 12th, 13th, 14th, 15th, 16th, 17th, 18th, 19th, 22nd, 23rd, 24th and 25th
grounds for postconviction relief. Accordingly, we overrule appellant's second assignment of error.
 By his third assignment of error, appellant argues that Ohio's postconviction procedures did not provide him with an adequate corrective process or comply with constitutional guarantees of due process or equal protection. Specifically, appellant contends that postconviction procedures were inadequate because the trial court did not conduct an evidentiary hearing and appellant did not have the opportunity to conduct discovery. We disagree.
 In State v. Scudder (1998), 131 Ohio App.3d 470, 478, this court concluded that "R.C. 2953.21 is an adequate procedural means by which to hear and determine postconviction constitutional issues." See, also, Jones (finding that "neither the failure to grant discovery in the initial stages of postconviction proceedings nor the application of res judicata to bar a claim makes [postconviction procedures] constitutionally infirm"). Furthermore, we have determined that appellant failed to adduce facts that would entitle him to relief. Accordingly, we overrule appellant's third assignment of error.
 By his fourth assignment of error, appellant contends that the trial court's cumulative error warrants reversal or remand for a proper postconviction process. Under the doctrine of cumulative error, a judgment may be reversed where the cumulative effect of errors deprives a defendant of his constitutional rights, even though the errors singularly do not rise to the level of prejudicial error. State v. DeMarco (1987), 31 Ohio St.3d 191, 196-197. Because we have not found any instances of error in this case, the doctrine of cumulative error does not apply. Accordingly, appellant's fourth assignment of error is overruled.
 For the foregoing reasons, appellant's assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
DESHLER and LAZARUS, JJ., concur.
[1] Appellant raises no arguments on appeal regarding his 20th
or 21st grounds for postconviction relief.