The STATE of Ohio, Appellee,

v.

SCUDDER, Appellant.

[Cite as *State v. Scudder* (1998), 131 Ohio App.3d 470.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 97APA12–1642.

Decided Dec. 3, 1998.

*Ron O'Brien,* Prosecuting Attorney, *Joyce S. Anderson* and *Katherine J. Press,* Assistant Prosecuting Attorneys, for appellee.

*Keith A. Yeazel,* for appellant.

PETREE, Judge.

In May 1989, the Franklin County Grand Jury returned a multiple-count indictment charging defendant, Kevin P. Scudder, with two counts of aggravated murder, one count of attempted rape, and one count of kidnapping. Each of the charges arose as the result of the attempted rape and death of fourteen-year-old Tina Baisden on February 6, 1989.

In 1990, defendant was tried to a jury, which found him guilty of all charges and specifications set forth in the indictment. Following the mitigation phase of the trial, the court sentenced defendant to death for the stabbing death of Tina Baisden. On appeal, this court affirmed both defendant's conviction and sentence. *State v. Scudder* (Oct. 20, 1992), Franklin App. No. 91AP–506, unreported, 1992 WL 302432. Likewise, defendant's conviction was affirmed by the Ohio Supreme Court in *State v. Scudder* (1994), 71 Ohio St.3d 263, 643 N.E.2d 524.

After exhausting his direct appeals, defendant filed a petition for postconviction relief with the trial court. Defendant raised five claims in his original petition, and an additional three claims in a subsequent amended petition. In substance, those claims are (1) that defendant was denied a fair trial due to the trial court's refusal to permit the presentation of additional mitigating evidence; (2) that defendant was denied effective assistance of counsel in regard to the admission of DNA evidence; (3) that defendant was denied a fair trial by virtue of the admission of unreliable DNA evidence; (4) that defendant was denied effective assistance of trial counsel as counsel failed to present the testimony of an alleged alibi witness; (5) that defendant was denied a fair trial by virtue of the state's failure to disclose exculpatory evidence; (6) that defendant was denied effective assistance of counsel as counsel failed to present the jury with accurate and

competent evidence of defendant's alleged mental impairment; (7) that defendant was denied a fair trial by the admission of unreliable psychological evidence; and (8) that defendant was denied a fair trial by virtue of the trial court's incorrect jury instructions.

On August 22, 1996, the state of Ohio moved to dismiss defendant's petition on the basis that the claims raised therein were factually unsupported and were barred by the doctrine of *res judicata*. On November 21, 1997, the trial court issued a decision which included comprehensive findings of fact and conclusions of law, and which also dismissed defendant's petition for relief. Thereafter, defendant filed a notice of appeal raising the following three assignments of error:

"I. The trial court erred when it violated appellant's right to equal protection and due process right to effective assistance of counsel and his right to proceed pro se by failing to conduct an evidentiary hearing on appellant's claim of ineffective assistance of post conviction counsel and desire to proceed pro se.

"II. The trial court erred in failing to hold a hearing on petitioner's ineffective assistance of counsel claim, thus violating his rights under the Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments to the United States, [sic] and Article I, Sections 1, 2, 9, 10, 16 and 20 of the Ohio Constitution.

"III. The trial court erred in dismissing the petition because the state post conviction scheme as applied offers an inadequate corrective process for the factual development, hearing and determination of claims of violation of state and federal constitutional guarantees."

In his first assignment of error, defendant alleges that he was entitled to a constitutional due process and equal protection right to the effective assistance of counsel during the pendency of his postconviction proceedings. We do not agree.

The Sixth Amendment to the United States Constitution provides a right to the effective assistance of counsel in criminal proceedings. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. That right also applies in certain civil proceedings where the state seeks to impinge on a life, liberty, or property interest. See *State ex rel. Heller v. Miller* (1980), 61 Ohio St.2d 6, 15 O.O.3d 3, 399 N.E.2d 66 (holding that actions instituted to force the permanent, involuntary termination of parental rights required that indigent parents be provided with counsel and a transcript at public expense). However, as we explained in *State v. Jackson* (June 30, 1998), Franklin App.No. 97APA12–1660, unreported, 1998 WL 354023, the right to appointed counsel does not apply in civil postconviction relief proceedings. In *Jackson*, we explained:

" ' "The right to appointed counsel extends to only the first appeal of right, and since a defendant has no federal constitutional right to counsel when pursuing a discretionary appeal on direct review of his conviction, * * * he has no such right

when attacking, in post-conviction proceedings, a conviction that has become final upon exhaustion of the appellate process. * * * States have no obligation to provide postconviction relief, and when they do, the fundamental fairness mandated by the Due Process Clause does not require that the State supply a lawyer as well." ' " *Id.* at 10–11, quoting *Pennsylvania v. Finley* (1987), 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539, syllabus.

Except as noted above, a civil litigant does not have a right to the effective assistance of appointed counsel. "Unlike a criminal defendant, a civil litigant has no constitutional right to the effective assistance of counsel." *Goldfuss v. Davidson* (1997), 79 Ohio St.3d 116, 126, 679 N.E.2d 1099, 1106. Accordingly, although the General Assembly felt it appropriate to grant indigent postconviction petitioners access to appointed counsel, it was not required to do so, nor was it required to guarantee the effective assistance of counsel. Indeed, it appears that the General Assembly anticipated and sought to prevent collateral attacks upon counsel's performance by way of R.C. 2953.21(I)(2). That provision reads:

"The ineffectiveness or incompetence of counsel during proceedings under this section does not constitute grounds for relief in a proceeding under this section, in an appeal of any action under this section, or in an application to reopen a direct appeal."

In Ohio, postconviction relief proceedings are civil in nature. *State v. Mapson* (1987), 41 Ohio App.3d 390, 535 N.E.2d 729; *State v. Haliym* (Mar. 12, 1998), Cuyahoga App. No. 72411, unreported, 1998 WL 108139; *State v. Key* (Dec. 28, 1993), Franklin App. No. 91AP–1517, unreported, 1993 WL 540290 (1993 Opinions 5939). Consequently, defendant has no Sixth Amendment right to the effective assistance of counsel and the trial court did not err in failing to conduct a hearing upon appellant's claims that postconviction counsel was ineffective. Defendant's first assignment of error is thus overruled.

In his second assignment of error, defendant argues that the trial court erred in failing to hold a hearing on his petition for postconviction relief. In particular, defendant argues that the trial court erred when it applied the doctrine of *res judicata* to dismiss defendant's petition.

R.C. 2953.21 provides:

"(A)(1) Any person who has been convicted of a criminal offense * * * and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief."

It is well settled that constitutional issues may not be considered in a postconviction proceeding where they have already been, or could have been, litigated by the defendant on direct appeal.

■ " ' "Under the doctrine of *res judicata,* a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating *in any proceeding except an appeal from that judgment,* any defense or any claimed lack of due process that was *raised or could have been raised by the defendant at the trial,* which resulted in that judgment of conviction, *or on an appeal* from that judgment." ' " (Emphasis added.) *State v. Szefcyk* (1996), 77 Ohio St.3d 93, 95, 671 N.E.2d 233, 235, quoting *State v. Perry* (1967), 10 Ohio St.2d 175, 39 O.O.2d 189, 226 N.E.2d 104, paragraph nine of the syllabus.

■ A petition for postconviction relief may be dismissed without a hearing, based upon the doctrine of *res judicata,* when the trial court finds that the petitioner could have raised the issues in his petition at trial or on direct appeal without resorting to evidence which is beyond the scope of the record. *State v. Mullins* (1995), 104 Ohio App.3d 684, 662 N.E.2d 1142.

In this case, defendant was provided a full and fair opportunity to litigate his claims that he was denied the effective assistance of trial counsel. On appeal to this court, defendant raised twenty-one assignments of error, including assignments of error alleging the ineffective assistance of counsel. In our decision we noted:

"Defendant sets forth six instances where defense counsel's performance was allegedly deficient. These instances are: failure to challenge the admissibility of DNA evidence; failure to object to the excusal of prospective juror Winters; failure to object to other acts evidence; failure to assure that the contents of defendant's wallet did not reach the jury; failure to object to the prosecutor's closing argument; and failure to object to the informing of the jury that their sentence was a recommendation."

We continued, finding that "[e]ach of defense counsel's alleged deficiencies have previously been discussed and held not to be error. Thus, defendant cannot meet the *Strickland* test." [1]  *Id.*

---

1. In *Strickland, supra,* the United States Supreme Court held that in order to show the ineffective assistance of criminal counsel a defendant must demonstrate the following: "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.,* 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693.

Similarly, in his direct appeal before the Ohio Supreme Court, defendant raised forty-seven assignments of error, several dealing with ineffective assistance of counsel. The Supreme Court noted:

"In his thirty-first through thirty-third propositions of law, appellant claims that he was deprived of the effective assistance of counsel throughout the trial and appellate proceedings. In considering appellant's arguments, we find that appellant has failed to meet his burden of establishing ineffective assistance under the standards set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. Therefore, we reject appellant's thirty-first, thirty-second and thirty-third propositions of law." *Scudder, supra,* 71 Ohio St.3d at 273–274, 643 N.E.2d at 533.

In this case, defendant's postconviction arguments going to the effectiveness of counsel are based upon issues that were part of the record, and that were in fact litigated in the context of defendant's direct appeals. Although defendant alleges that he now relies upon evidence outside the scope of the record, we find nothing that would have prevented defendant from presenting that evidence to either this court or the Ohio Supreme Court in support of his direct appeals. Accordingly, having reviewed defendant's petition, we do not believe that the trial court erred when it dismissed the petition on the basis of *res judicata.*

■ As noted, defendant's postconviction petition set forth eight claims for relief. First, defendant claims that he was denied a fair mitigation hearing because the trial court refused to allow him to present additional evidence after the jury returned its recommendation. In support of that claim, defendant submitted the affidavit of former counsel Scott Jelen. Jelen's affidavit stated (1) that a "motion" to present additional evidence was denied by the trial court, and (2) that it was his opinion that "with additional time for investigation, additional mitigating evidence could have been presented." [2]

As correctly noted by the trial court, there is nothing in defendant's first claim that requires the examination of evidence outside the scope of the record. The mere filing of an affidavit belatedly raising a claim that the trial court erred in not allowing defendant additional time in which to present mitigating evidence does not amount to evidence beyond the record requiring an evidentiary hearing.

---

2. In its decision, the trial court noted that the record reflected that on December 6, 1990, attorneys Jelen and McHenry filed a *"Motion to Appoint New Counsel"* two days after the jury returned its recommendation that defendant be sentenced to death. In support of their request, counsel stated that "[u]ndersigned counsel plans to present other mitigating evidence * * * [and] plans to write a detailed memorandum which will outline * * * why Mr. Scudder should not be sentenced to death." The court further noted that while counsel made a statement on behalf of defendant at sentencing, and filed a motion for new trial on January 14, 1991, nothing was raised regarding new mitigating evidence.

Additionally, defendant's first claim was also properly barred by the doctrine of *res judicata* as it was clearly capable of being raised on direct appeal.

In his second and third claims, defendant attacks his trial counsel's competency in dealing with the admission of DNA evidence. In support of those claims, defendant submits the affidavit of William C. Thompson. In essence, the Thompson affidavit opines that trial counsel was unable to effectively defend against the admission and use of DNA evidence at defendant's trial. However, having reviewed Thompson's affidavit, we agree with the trial court's conclusion that it does not constitute evidence outside the record, as Thompson bases his opinion on evidence that is in fact contained within the transcript of defendant's trial. In addition, the issues surrounding the use of DNA evidence, and defendant's claim that his counsel was ineffective in defending against the use of this evidence, were issues that were litigated by defendant before this court and the Ohio Supreme Court.

In his fourth and fifth claims, defendant asserts that his trial counsel was ineffective in failing to call a potential alibi witness. Having reviewed these claims, we agree with the trial court that such claims were not supported by affidavit or other competent evidence outside the record. In addition, we have found no error in the trial court's application of *res judicata* to bar these claims.

In his sixth and seventh claims, defendant argues that counsel was ineffective for failing to present the jury with accurate and competent evidence of defendant's alleged "organic brain impairment." In support of this allegation, defendant offered the affidavit of Dr. Jolie S. Brams. Again, having reviewed the matter, we believe that the trial court was correct in its conclusion that Brams's affidavit presents no evidence beyond the scope of the record that has not been, or that could not have been, addressed in defendant's direct appeals.

In his final claim, defendant argues that the trial court erred when it instructed the jury at the conclusion of his trial. Clearly, this also is an issue that defendant was capable of raising on appeal. No evidence outside the record having been presented, we find that the trial court did not err in rejecting this claim.

"R.C. 2953.21(C) provides that before a court grants a hearing on a petition for post-conviction relief, it must determine if substantive grounds for relief exist * * *. If a petition for post-conviction relief does not allege facts that, if proved, would entitle the prisoner to relief, the trial court may so find and summarily dismiss the petition." *Jackson, supra.*

Having enjoyed a full and fair opportunity to litigate defendant's claims, the trial court did not err in dismissing defendant's petition for postconviction relief

on the basis that it was not supported by evidence outside the record and upon the basis of *res judicata*. Accordingly, defendant's second assignment of error is overruled.

In his third assignment of error, defendant maintains that the trial court erred when it refused to grant him an evidentiary hearing, thus denying him an opportunity to develop a factual basis for his claims. As a general matter, R.C. 2953.21 is an adequate procedural means by which to hear and determine postconviction constitutional issues. Moreover, as to this case, we have already found that defendant failed to adduce facts that would entitle him to relief. As previously stated, if a petition for postconviction relief does not allege facts that, if proved, would entitle the petitioner to relief, the trial court may so find and summarily dismiss the petition. *State v. Perry* (1967), 10 Ohio St.2d 175, 39 O.O.2d 189, 226 N.E.2d 104. Accordingly, defendant's third assignment of error is overruled.

For the foregoing reasons, defendant's assignments of error are overruled and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.

*Judgment affirmed.*

STRAUSBAUGH, J., concurs.

TYACK, J., dissents.

DEAN STRAUSBAUGH, J., retired, of the Tenth Appellate District, sitting by assignment.

TYACK, Judge, dissenting.

Since I see problems with the majority's analysis and disposition of issues as to both the entitlement to effective assistance of counsel in these postconviction proceedings, and as to evidence *dehors* the record, I respectfully dissent.

I address first the disposition by the majority regarding petitioner's claims of ineffective assistance of counsel in general. The majority states that "the right to appointed counsel does not apply in civil postconviction relief proceedings." While "civil postconviction" is a troublesome phrase, its intended distinction is one of common usage; as the majority often reiterates, there generally exists no right to counsel in civil proceedings, as opposed to most criminal proceedings, save for a few delineated statutory exceptions. As the majority explains, postconviction proceedings are typically treated as "civil" proceedings. Accordingly, I must concur with the majority's general statement regarding civil proceedings and an indigent's lack of constitutional entitlement to court-appoint-

ed counsel. However, I part company with my colleagues on the right to counsel in this case.

As noted by the majority almost in passing, the General Assembly has "felt it appropriate to grant indigent postconviction petitioners access to appointed counsel." To be more precise, the statute referred to by the majority, R.C. 2953.21(I), applies specifically to indigent petitioners sentenced to death. Notwithstanding this express grant, the majority goes on to diminish the significance of this statutory right by stating that the legislature "was not required to do so, nor was it required to guarantee the *effective* assistance of counsel." (Emphasis added.) This observation, it seems to me, is nonresponsive to the issues presented. Although the legislature was not "required" to enact this legislation, it did so. Given this statutory provision, the legislature clearly intended that postconviction proceedings arising from capital cases be treated differently from "civil" postconviction actions in general. Thus, while the Sixth Amendment right to counsel may not be implicated here, our legislature has inarguably carved out a statutory exception to the general rule applied to "civil" proceedings insofar as the right to counsel applies.

While acknowledging that the General Assembly did, in fact, enact legislation to guarantee the appointment of postconviction counsel on behalf of those sentenced to death, the majority ultimately concludes that "effective" counsel was not included in this guarantee. The majority quotes one sentence, the final sentence, of the statutory provision, R.C. 2953.21(I), to bolster its conclusion that the General Assembly "anticipated and sought to prevent collateral attacks upon counsel's performance." That sentence reads:

"The ineffectiveness or incompetence of counsel during proceedings under this section does not constitute grounds for relief in a proceeding under this section, in an appeal of any action under this section, or in an application to reopen a direct appeal." R.C. 2953.21(I)(2).

What precedes this statement is critical language. My interpretation of the statutory language omitted by the majority reveals the legislature's understanding that a person sentenced to death must be entitled to *effective* counsel at all stages of the proceedings:

"(I)(1) If a person who has received the death penalty intends to file a petition under this section, the court *shall* appoint counsel to represent the person upon a finding that the person is indigent and that the person either accepts the appointment of counsel or is unable to make a competent decision whether to accept or reject the appointment of counsel. The court may decline to appoint counsel for the person only upon a finding, after a hearing if necessary, that the person rejects the appointment of counsel and understands the legal consequences of that decision or upon a finding that the person is not indigent.

"(2) The court shall not appoint as counsel under division (I)(1) of this section an attorney who represented the petitioner at trial in the case to which the petition relates unless the person and the attorney expressly request the appointment. The court *shall appoint as counsel* under division (I)(1) of this section *only an attorney who is certified under Rule 65 of the Rules of Superintendence for Courts of Common Pleas* to represent indigent defendants charged with or convicted of an offense for which the death penalty can be or has been imposed." (Emphasis added.) R.C. 2953.21(I)(1) and (2).

The emphasized language mandates an interpretation of this statute to require not only the appointment of counsel, but the appointment of effective, specialized counsel. Specifically, counsel who are appointed must be Civ.R. 65 certified, uniquely trained for such important litigation. Any other interpretation would completely eviscerate the intent of the statute as a whole. As an example, it does not seem likely that a petitioner sitting on death row who, perhaps, discovers highly exculpatory evidence that blatantly should have been discovered by the first postconviction counsel at an earlier time would have his subsequent postconviction petition simply dismissed because the petitioner had already had his "one bite of the apple." As exemplified, I cannot imagine that the legislature intended such a result to ensue when postconviction counsel is blatantly ineffective.

Thus, it is my position that not only are postconviction capital offenders entitled to appointed counsel, they are entitled to *effective* counsel. If we are to adopt the state's position, based solely upon the final sentence quoted above and significantly relied upon by the majority, then, potentially, the entire notion of a capital defendant's statutory right to effective assistance in postconviction proceedings is ultimately rendered meaningless.

I turn now to my specific concerns regarding the trial court's dismissal of this petition, applying the doctrine of *res judicata* to claims of ineffective assistance of counsel based upon evidence *de hors* the record. The trial court wrote:

"The law pertaining to post-conviction petitions for relief is well defined. R.C. 2953.21 requires that the trial court render findings of fact and conclusions of law when denying a post-conviction petition. *State v. Mapson* (1982), 1 Ohio St.3d 217, 218 [1 OBR 240, 241–242, 438 N.E.2d 910, 911–912]. Defendant bears the initial burden of submitting affidavits or other material containing sufficient operative facts which indicate he is entitled to relief. *State v. Kapper* (1983) 5 Ohio St.3d 36, 38 [5 OBR 94, 96, 448 N.E.2d 823, 825–826], quoting *State v. Jackson* (1980), 64 Ohio St.2d 107 [18 O.O.3d 348, 413 N.E.2d 819]. 'Defendant's own self-serving declarations or affidavits are insufficient * * *.' If defendant does not meet this burden, the court is not required to conduct an evidentiary hearing.

" * * * *

"A defendant cannot raise an issue in a petition for post-conviction relief if the issue could have been raised on direct appeal. *State v. Reynolds* (1997), 79 Ohio St.3d 158, 161 [679 N.E.2d 1131, 1133–1134], citing *State v. Darling [Duling]* (1970), 21 Ohio St.2d 13 [50 O.O.2d 40, 254 N.E.2d 670]. In regards to the application of the doctrine to claims of ineffective assistance of counsel, the doctrine will be applied and bar such claims where the claim does not rely on evidence outside the record and defendant is represented by new counsel on appeal. *State v. Cole* (1982), 2 Ohio St.3d 112 [2 OBR 661, 443 N.E.2d 169]."

Appellate counsel alleges that resolution of certain key issues depends upon evidence that was *not* in the record on direct appeal—the type of evidence which goes to the very heart and purpose of postconviction proceedings. The majority of this court summarily responds, with minimal elaboration, that it finds "nothing which would have prevented defendant from presenting that evidence to either this court or the Ohio Supreme Court in support of his direct appeals." The simple fact remains that evidence *not* contained in the record on direct appeal *cannot* be "present[ed] * * * to either this court or the Ohio Supreme Court." For example, if new evidence simply did not exist at the time of trial, it obviously could not be presented to the trial court. If the evidence became known soon after a guilty verdict, the evidence could possibly be considered pursuant to the timely filing of a motion for new trial. However, if the evidence does not become known until the direct appeal is pending, an appellant cannot supplement the record on appeal with evidence which was not before the trial court. Since the evidence is not a part of the record on direct appeal, neither this court nor the Supreme Court of Ohio would consider it. Hence, postconviction relief is a petitioner's lone avenue to present such evidence.

If the additional evidence was not in the record, it was not in the record. We, as an appellate court, cannot decide direct appeals based upon what could have been in the record or what should have been in the record. We can decide only based upon what is in the record. We would never permit a witness who did not testify at trial or at least provide an affidavit to the trial court to present that witness's opinion for our consideration on direct appeal. Again, I reiterate that this evidentiary restriction explains why the legislature prudently enacted a potential cure—postconviction proceedings, likely the only forum in which we, as reviewing courts, do not have our judicial hands tied and our eyes forcibly shut with respect to evidence for merely *dehors* the record.

I turn now to the specific evidence appellant attempted to at least have considered via his postconviction relief petition.

This leads directly to a discussion of the affidavit of William C. Thompson. The theory that trial counsel did not effectively address the DNA evidence presented at trial was a theory presented on direct appeal. However, the

appellate courts could not consider expert opinion evidence that trial counsel struggled. Instead, the appellate courts could only draw inferences from what was in the record. The new opinion evidence is, for me, the essence of what should be presented by way of postconviction relief.

Similarly, evidence of Scudder's organic brain damage was presented on postconviction relief by way of an affidavit of Jolie S. Brams, Ph.D. The majority of this panel suggests that this affidavit could have been addressed in defendant's direct appeals. For the reasons stated above, this simply is not so.

Given the critical information contained in these affidavits, in particular, I believe that the trial court should have conducted an evidentiary hearing on the merits of the petition for postconviction relief. After receiving live testimony, the trial court could then decide what relief, if any, was warranted.

We, as appellate courts, should be mindful that in such cases we are deciding whether someone should live or die. We must exercise great care to assure that the trial proceedings, as well as *any* proceedings which follow, are properly conducted and that the facts are accurately and thoroughly determined. Based upon my interpretation of the postconviction statute as applied here, I believe that the legislature is also mindful of the gravity of these cases. The evidence presented for the trial court's consideration deserved careful, independent analysis following a hearing to determine the potential substantive merit. Therefore, I would sustain the third assignment of error insofar as the trial court erroneously applied the statutory provisions addressed above in failing to conduct a hearing. Since the majority does not, I respectfully dissent.