[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
¶ 1 David L. Braden, defendant-appellant, appeals the judgment of the Franklin County Court of Common Pleas, wherein the court denied his post-conviction petition.
¶ 2 On the evening of August 3, 1998, appellant shot his girlfriend, Denise Roberts, and her father, Ralph Heimlich, at Roberts' home. Appellant denied any memory of the incident, although there were eyewitnesses that placed him at the house at the time of the shooting, and there was evidence that appellant harassed Roberts at work earlier that day. On August 13, 1998, appellant was indicted on two counts of aggravated murder, with one death penalty specification, pursuant to R.C. 2929.04(A)(5). The trial court appointed attorneys Tom Beal and Lon Allen to represent appellant. In October 1998, Beal hired a neuropsychologist, Dr. Kathleen Burch, to evaluate appellant after learning that appellant had a prior head injury. Burch conducted a clinical interview on October 30, 1998, and concluded that appellant did not have a brain injury, although he may have paranoid personality disorder and depression. In mid-January 1999, Beal asked Dr. Burch to evaluate appellant again, after appellant referred to himself as a prophet of God, accused others of stealing his "miracle cures," and claimed various famous people kept him under surveillance. On February 12, 1999, Dr. Burch examined appellant and did not find him incompetent. Due to further reports that appellant was acting more delusional and deteriorating, Dr. Burch again evaluated appellant on March 12, 1999, and again did not find appellant to be incompetent, although he was deteriorating psychologically and experiencing delusions.
¶ 3 At a hearing on April 9, 1999, appellant gave Beal a note ("first note"), demanding a pardon, a new identity, a passport, luggage, clothes, airline tickets, honorary doctorate degrees, and 20 to 30 million dollars. The trial court and Dr. Burch were informed of the note, but Dr. Burch was not shown the note. On April 19, 1999, Dr. Burch examined appellant again and found him competent.
¶ 4 Appellant's jury trial began on May 5, 1999, at which appellant gave Beal another note ("second note"). The note indicated that God had instructed appellant to increase his demand to 100 million dollars and to add U.S. diplomat to his credentials. Neither the court nor Dr. Burch were informed of the second note. On May 11, 1999, the jury found appellant guilty of both counts, and on July 7, 1999, the court imposed the recommended death sentence on each count. Appellant appealed his conviction and sentence, and that appeal was recently decided by the Ohio Supreme Court in State v. Braden, 98 Ohio St.3d 354,2003-Ohio-1325.
¶ 5 On June 9, 2000, appellant filed a petition for post-conviction relief, raising 13 grounds for relief. Appellant's petition was based upon numerous grounds, one of which was Dr. Burch's post-sentencing opinion that appellant was not competent to stand trial, based largely upon the second note and Dr. Douglas Mossman's post-conviction opinion that appellant was not competent to stand trial. On April 19, 2002, the trial court held an evidentiary hearing on the issue of appellant's competency, at which Beal and Dr. Burch testified. The court denied the petition on August 2, 2002. Appellant appeals, asserting the following six assignments of error:
¶ 6 "[I.] The trial court erred in determining that appellant was competent when he stood trial because appellant could not assist in his defense, nor did he have a rational understanding of the proceedings against him, all in violation of his right to due process of law.
¶ 7 "[II.] The trial court erred in applying res judicata to appellant's claims.
¶ 8 "[III.] The trial court erred in not considering postconviction psychiatric evidence, in violation of appellant's right to due process of law.
¶ 9 "[IV.] The trial court erred in ruling that it did not violate defendant's right to due process of law when it failed to sua sponte hold a competency hearing during trial.
¶ 10 "[V.] The trial court erred in finding that defense counsel did not provide ineffective assistance, in violation of defendant's rights under the sixth, eighth and fourteenth amendments.
¶ 11 "[VI.] The trial court erred in dismissing appellant's postconviction petition where it was supported by sufficient operative facts to merit an evidentiary hearing on all claims and discovery."
¶ 12 We will address appellant's first, second, and third assignments of error together, as they are related. Appellant argues in his first assignment of error the trial court erred in determining that he was competent when he stood trial because he could not assist in his defense and did not have a rational understanding of the proceedings against him. Appellant argues in his second assignment of error the trial court erred in applying res judicata to his claims. Appellant argues in his third assignment of error the trial court erred in not considering his post-conviction psychiatric evidence.
¶ 13 The appellate standard of review for post-conviction relief under R.C. 2953.08 is de novo. State v. Davis (1999), 133 Ohio App.3d 511,515. However, in the interest of providing finality to judgments of conviction, courts construe the post-conviction relief allowed under R.C. 2953.21(A)(1) narrowly. See State v. Steffen (1994),70 Ohio St.3d 399, 410. Further, when a trial court rules on a petition for post-conviction relief after a hearing, an appellate court will give deference to the trial court's findings of fact. See State v. Jolly (June 24, 1993), Cuyahoga App. No. 62380.
¶ 14 In denying appellant's petition for post-conviction relief with regard to the issues raised in the first three assignments of error, the trial court: (1) refused to consider Dr. Mossman's affidavit, in which Dr. Mossman averred that appellant was not competent to stand trial based upon his examination eight months after the sentencing; (2) found Dr. Burch's changed opinion was not credible; (3) found the issue of appellant's competency could have been raised on direct appeal; and (4) held that because Dr. Mossman's affidavit could not be considered and Dr. Burch's opinion was not credible, there was no evidence outside the record to prevent the application of res judicata. Thus, we must review the testimony of Dr. Burch and the affidavit of Dr. Mossman.
¶ 15 With regard to Dr. Burch, the trial court found her changed testimony was not credible. Dr. Burch conducted four evaluations of appellant prior to trial and found appellant competent after all four examinations. Dr. Burch claimed at the post-conviction hearing that her opinion changed when she saw the evidence of appellant's communications with his lawyers during trial, specifically the second note. Although she had not seen the first April 9, 1999 note prior to her April 19, 1999 evaluation, that note was what had prompted the evaluation, and she testified that she had been informed of its contents. The April 9, 1999 note stated:
¶ 16 "* * *
¶ 17 "was no fluke it is a warning from God. I am to be given a new Identity Dr. David Benjamin[,] Passport and all necessary Id[,] with a clean back round [sic] and honorary doctorates in the fields that I have contributed to[,] arts, medicine, Science etc[.] The State is to put between 20 and 30 mil dollars in an account opened for this Identity in the World Bank (INTL Bank for Recon + Redevelopment) with cards and Docs[,] Traveling clothes[,] luggage[,] anywhere (world) passes on TWA good for one year. And full pardon from the pending case."
¶ 18 Essentially, Dr. Burch's changed opinion turned on the second note, which neither she nor the court were aware of during the trial or mitigation hearing. The second note stated:
¶ 19 "God has instructed me to let you know the price is now 100 million and U.S. Diplomat is to be added to the credentials in addition to everything else."
¶ 20 We agree with the trial court that Dr. Burch's changed opinion was not credible in that it lacked reasonable foundation. Dr. Burch testified that the second note was more "florid" than appellant's previous communications, demonstrated increased delusional beliefs, and was demonstrative of one of the elements of competency, i.e., the ability of the accused to communicate with his or her counsel. However, we fail to see how the second note provided any new information to add to appellant's psychological profile, and it was not significantly relevant. Although Dr. Burch testified that the question of competency was close during the initial trial, the second note's contents could not have swayed her opinion in light of her knowledge of the first note. The second note was a continuation of the first note, reiterated the same views from the first note, and merely increased appellant's demands. The overall insignificance of the second note is evidenced by the fact that trial counsel informed the court and Dr. Burch of the first note yet failed to inform the trial court or Dr. Burch of the second note. We also note that, during her March 12 and April 19, 1999 evaluations of appellant, appellant told Dr. Burch essentially the same things contained in the first and second notes, thereby diminishing any significance of the second note. As with the first and second notes, appellant told Dr. Burch that God was going to protect him from trial, give him a monetary settlement, and a chance to start a new life with a new name. Thus, the second note contained no new information.
¶ 21 Further, although Dr. Burch testified the second note demonstrated one of the elements of incompetency to stand trial, i.e., that appellant cannot communicate rationally with counsel, we see no necessary correlation between the content of the second note and appellant's ability to communicate rationally with his attorneys during trial. That appellant may have made bizarre demands in his second note does not support an automatic inference that appellant was also unable to communicate effectively with his attorneys. There is no additional evidence to demonstrate that appellant could not communicate with his trial attorneys. To the contrary, Beal testified that he communicated with appellant during trial, appellant never ignored any questions, never rambled in anger, and always responded appropriately. Beal also testified that appellant made notes during trial. Beal agreed that, although appellant claimed he did not remember what happened, this does not necessarily constitute refusing to discuss the case. Beal further testified that appellant eventually gave him full details and a full accounting of his whereabouts at the time of the murder, although he claimed he was in bed sleeping at the time of the homicides and did not remember killing anybody. Although Beal stated that appellant communicated less with him at trial than other clients had in the past, appellant could not have really helped him during trial because appellant claimed he was not at the scene and did not commit the murders. Beal also testified that appellant effectively communicated with him about whether he knew any of the witnesses or whether they held a grudge against him. In addition, after appellant told the trial judge that he did not know what a "PSI" was during the mitigation phase, Beal went off the record and explained to appellant that it was a pre-sentence investigation report. When they went back on the record, appellant told the court that he now understood what it meant, thereby demonstrating his ability to understand his counsel's instruction. The trial court noted several instances where appellant responded and acted appropriately during the hearings. Dr. Burch also admitted during her post-conviction testimony that she did not attend the trial and does not know how effectively appellant communicated with his attorneys. Therefore, Dr. Burch's conclusion that the second note demonstrated appellant could not communicate rationally with his counsel about the case is unpersuasive. For these reasons, the second note could not form a reasonable basis for Dr. Burch to change her opinion of appellant's competency to stand trial. We find the trial court did not err in finding Dr. Burch's changed testimony not credible and lacking in any reasonable foundation.
¶ 22 With regard to Dr. Mossman's affidavit, at the hearing, the trial court refused to allow Dr. Mossman to testify, indicating that because his live testimony would be the same as his affidavit, it would consider Dr. Mossman's affidavit. However, in its decision, the trial court indicated that it would not consider Dr. Mossman's affidavit. Appellant argues the trial court's failure to consider Dr. Mossman's affidavit denied him due process.
¶ 23 We first point out that the trial court's refusal to take Dr. Mossman's affidavit into account was, in fact, partially based on what it perceived as a credibility issue. Although the trial court indicated that it would not "consider" the affidavit, it actually did consider Dr. Mossman's persuasiveness and credibility. The court pointed out that Dr. Mossman did not evaluate appellant prior to or during trial, and his evaluation did not occur until eight months after trial. Thus, the trial court was questioning the dubious reliability of Dr. Mossman's evaluation because of the remoteness of the exam. The trial court also pointed out that to accept Dr. Mossman's conclusion of incompetency would have directly contradicted Dr. Burch's competency opinion during that time. The trial court's comments also suggest that past experience with this particular expert raised some question of credibility. Therefore, the trial court did, in fact, give some rationale as to why it did not find Dr. Mossman's testimony persuasive on the issue of competency.
¶ 24 However, the trial court also rejected Dr. Mossman's affidavit outright on purely legal grounds, citing State v. Steffen
(Aug. 7, 1991), Hamilton App. No. C-900596. In Steffen, the petitioner sought post-conviction relief, in part, on the basis of a psychologist's post-conviction critique of the court-appointed psychologists. The court found that challenging the competency of mental health experts with post-conviction experts does not invoke any constitutional issue and would turn such post-conviction proceedings into a never ending battle of experts. Although Steffen related to a challenge of an expert's trial and mitigation testimony, and the present case relates to a challenge of an expert's competency evaluations, we find its rationale applicable to and compelling in this case. In essence, Dr. Mossman was attempting to impeach the opinion of Dr. Burch. Although Dr. Burch since changed her opinion in this case, which we found above was unsupported by the evidence, to permit Dr. Mossman to challenge the prior competency determinations of Dr. Burch would prevent finality in any case involving psychological examinations, and encourage post-conviction expert shopping.
¶ 25 The First District Court of Appeals has followed the reasoning in Steffen numerous times and refused to accept the opinion of a "newly found" mental health expert presented in a post-conviction petition in order to contradict the findings of the mental health expert used at trial. See State v. Clemons (Aug. 30, 1999), Hamilton App. No. C-980456 (refusing the report of a newly found psychiatrist attached to a post-conviction petition to challenge the trial testimony of the court-appointed psychological expert to avoid a never ending battle of experts); State v. Jamison (Nov. 10, 1992), Hamilton App. No. C-910736 (refusing to consider the affidavit of a psychologist presented with a post-conviction petition to discredit the court-appointed psychologist used at trial); State v. Holloway (Jan. 29, 1992), Hamilton App. No. C-900805 (refusing to consider the post-conviction affidavits of three reviewing psychologists who discussed numerous alleged inadequacies in the evaluations performed by the defendant's court-appointed experts);State v. Bedford (Sept. 11, 1991), Hamilton App. No. C-900412 (same). We find the reasoning in Steffen applies similarly to the present case to prevent Dr. Mossman from challenging the competency evaluations conducted prior to and during trial. Therefore, the trial court did not err in declining to consider Dr. Mossman's affidavit.
¶ 26 Appellant next argues the trial court erred in applying res judicata to the present case. Under the doctrine of res judicata, a final judgment bars a convicted defendant from "raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment of conviction, or on an appeal from that judgment." State v. Perry (1967), 10 Ohio St.2d 175, paragraph nine of the syllabus. See, also, State v. Szefcyk (1996),77 Ohio St.3d 93, 95 ("[r]es judicata is applicable in all postconviction relief proceedings").
¶ 27 A petitioner can overcome the res judicata bar to post-conviction relief only if the petitioner presents competent, relevant, and material evidence dehors, or outside, the record. State v.Lawson (1995), 103 Ohio App.3d 307, 315. However, the evidence relied upon must not be evidence that was in existence or available for use at the time of trial and should have been submitted at trial if the petitioner wished to make use of it. State v. Lynch (Dec. 21, 2001), Hamilton App. No. C-010209; State v. Redd (Aug. 31, 2001), Lucas App. No. L-00-1148; and State v. Murphy (Dec. 26, 2000), Franklin App. No. 00AP-233.
¶ 28 In the present case, the trial court found that appellant's competency could have been raised on direct appeal. The trial court held that Dr. Burch testified at length during the mitigation phase regarding appellant's competency, and, thus, there was sufficient information in the record to challenge Dr. Burch's opinion. Further, the court stated that, because it concluded that Dr. Burch's opinion was not credible and it would not consider Dr. Mossman's affidavit, this evidence dehors the record failed to prevent the application of res judicata. We agree with the trial court's rationale.
¶ 29 However, even if the trial court would have accepted both Drs. Burch and Mossman's opinions, we agree that res judicata could be applied under the present circumstances. A case with somewhat analogous facts to the present case is State v. Bradley (Dec. 2, 1996), Scioto App. No. 95CA2364. In Bradley, the trial court denied defendant's petition for post-conviction relief, which was based on the affidavits of two newly found psychologists and the defendant's two trial attorneys, who claimed the defendant had been unable to help them prepare the case. On appeal, the court of appeals affirmed. With regard to the affidavits from the trial attorneys, the court of appeals found that the information contained therein was available during trial and on appeal, and the doctrine of res judicata was applicable. With regard to the affidavits from the psychologists, the court noted that the psychologists examined the defendant for competency five years after the trial. The court also noted that the defendant was evaluated prior to and during trial by court-appointed examiners and examiners of the defendant's own choosing, all of whom found him competent. The court held that, although the information contained therein was outside the record, the application of res judicata was not precluded under such circumstances, citing State v.Butler (Mar. 19, 1992), Clark App. No. 2862, in which the court found that whether or not a defendant is competent to stand trial can be raised on direct appeal, and, thus, is subject to res judicata.
¶ 30 Likewise, in the present case, the testimony of appellant's trial counsel at the post-conviction hearing was res judicata because that information was available during trial and on direct appeal. Further, similar to Bradley, appellant was examined numerous times prior to and during trial by a psychologist of his own choosing and was found competent. Thus, following Bradley, the belated post-conviction competency evaluations by Drs. Burch and Mossman would not defeat the application of res judicata to the competency issue. Therefore, because the issue of appellant's competency could have been raised on direct appeal, we find res judicata was applicable to the present case. Appellant's first, second, and third assignments of error are overruled.
¶ 31 Appellant argues in his fourth assignment of error the trial court erred in ruling that it did not violate his due process rights when it failed to sua sponte hold a competency hearing during trial. We disagree. A defendant is presumed competent to stand trial. State v.Scurlock, Clark App. No. 2002-CA-34, 2003-Ohio-1052, at ¶ 77. A decision to conduct a competency hearing during the course of the trial is committed to the sound discretion of the trial court. State v. Berry
(1995), 72 Ohio St.3d 354. In determining whether to sua sponte conduct a competency hearing, the trial court should consider the following factors: doubts expressed by defense counsel as to a client's competency, evidence of irrational behavior, and any prior medical opinions known to the court concerning the defendant's competency. Statev. Draughn (1992), 76 Ohio App.3d 664. In the present case, appellant was evaluated four times prior to trial by appellant's own expert, who found appellant competent to stand trial. Appellant did not want a court-appointed psychologist and refused a competency hearing. Appellant's counsel did not inform the trial court at any time that appellant was incompetent. The trial court also pointed out several observations it made of appellant during the hearings, all of which supported a belief that appellant was competent to stand trial. Despite the court's knowledge of the first note, appellant listened to the proceedings, took notes, acted appropriately, and answered the court's questions. Simply put, there was no reason for the trial court to sua sponte hold a competency hearing when all of the evidence demonstrated that appellant was competent. The Ohio Supreme Court found in appellant's direct appeal that the record reflected no behavior by appellant during trial that would suggest the lack of legal incompetency. See Braden, at ¶ 117. Further, because the issue of the failure of the trial court to hold an evidentiary hearing on an appellant's competency to stand trial could have been raised on direct appeal, it is barred by res judicata from being asserted in a later proceeding. See State v. Hunt
(Feb. 1, 1983), Marion App. No. 9-82-1. Appellant's fourth assignment of error is overruled.
 {¶ 32} Appellant argues in his fifth assignment or error the trial court erred in finding his trial counsel did not provide ineffective assistance. Appellant contends that his trial counsel was ineffective for failing to alert the trial court to the second note and for failing to request a competency hearing. In order to prevail on the basis of ineffective assistance of counsel, appellant must demonstrate his counsel's performance fell below an objective standard of reasonableness, and the deficient performance prejudiced him to the extent of rendering his conviction unreliable. See Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052. With regard to the second note, as explained above, the second note added nothing new to appellant's psychological profile and was not significantly relevant. We do not see how the second note's contents could have swayed Dr. Burch or the trial court's opinion of appellant's competency in light of their knowledge of the first note. The second note reiterated the same views from the first note, and merely changed appellant's demands. Further, as indicated above, we see no necessary correlation between the content of the second note and appellant's ability to communicate rationally with his counsel during the trial.
 {¶ 33} With regard to trial counsel's failure to request a competency hearing, this issue is barred by res judicata. Appellant raised this issue on direct appeal in Braden. The Ohio Supreme Court held that appellant's trial counsel was not deficient by failing to request a competency hearing. Braden, at ¶ 117. Appellant's counsel made reasonable efforts to ascertain the competency of appellant to stand trial. Appellant's counsel scheduled four examinations of appellant by a psychologist of his own choosing. The specific results of Dr. Burch's examinations made clear that there was no evidence to compel a competency hearing. Therefore, appellant's fifth assignment of error is overruled.
 {¶ 34} In his sixth assignment of error, appellant argues the trial court erred in dismissing his post-conviction petition where it was supported by sufficient operative facts to merit an evidentiary hearing on all claims, not only the competency issue. In reviewing whether the trial court erred in denying a petition for post-conviction relief without an evidentiary hearing, we apply an abuse of discretion standard. State v. Chafin (Mar. 25, 1999), Franklin App. No. 98AP-865. In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. An evidentiary hearing is not automatically required for every petition for post-conviction relief. State v. McGuire (Apr. 20, 1998), Preble App. No. CA97-06-015. The Ohio Supreme Court recently stated that:
 {¶ 35} "Pursuant to R.C. 2953.21(C), a trial court properly denies a defendant's petition for post-conviction relief without holding an evidentiary hearing where the petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that petitioner set forth sufficient operative facts to establish substantive grounds for relief." State v. Calhoun (1999), 86 Ohio St.3d 279, paragraph two of the syllabus.
 {¶ 36} Further, a petition for post-conviction relief may be dismissed without an evidentiary hearing when the claims raised are barred by the doctrine of res judicata. Perry, supra, at paragraph nine of the syllabus. As explained above, res judicata will apply when the issue was raised or could have been raised by the defendant on direct appeal from the judgment. Szefcyk, supra, at 95, following Perry, at 175. The exception to the res judicata bar, as noted previously, is when the petitioner presents competent, relevant and material evidence outside of the record that was not in existence and available to the petitioner in time to support a direct appeal. Lawson, supra, at 315.
 {¶ 37} Appellant argues that he was entitled to an evidentiary hearing on several grounds for relief put forth in his petition for post-conviction relief. With regard to his sixth ground for relief in his petition, appellant argued that he demonstrated that he was denied effective assistance of counsel during the mitigation phase when his counsel failed to conduct a full investigation of his friends. However, this claim is barred by res judicata because any evidence relating to this issue was in existence and available in time to support a direct appeal.
 {¶ 38} With regard to his seventh ground for relief in his petition, appellant argued that he was denied his right to a fair and impartial trial by juror misconduct that occurred during deliberations. Appellant asserts that he supported this claim with evidence dehors the record, which included an affidavit of a juror and an affidavit of a juror interview conducted by a mitigation specialist. In one affidavit, a juror, Juror Verno, averred that another juror, Juror McClintock, had admitted to intentionally driving past the crime scene during trial and making several observations of the scene. Another juror, Juror Steckler, told the mitigation specialist that, during the trial, she discussed aspects of the case with her husband and asked her priest his views on the death penalty. However, in order to permit juror testimony to impeach the verdict, a foundation of extraneous, independent evidence must first be established. This foundation must consist of information from sources other than the jurors themselves, Wicker v. Cleveland (1948),150 Ohio St. 434, and the information must be from a source which possessed firsthand knowledge of the improper conduct. State v. Schiebel (1990), 55 Ohio St.3d 71, 75; see, also, Evid.R. 606(B) (enacts the evidence "aliunde" doctrine, which holds that a jury's verdict may be impeached in situations where foundational evidence from sources other than the jurors themselves is presented that creates at least a prima facie case that extraneous prejudicial information was considered by the jury or that some external influence was brought to bear on the jury).
 {¶ 39} In the present case, the evidence of juror misconduct is derived strictly from the jurors themselves. Juror Verno's affidavit about Juror McClintock was incompetent because the information therein was derived from another juror. One juror's affidavit alleging misconduct of another juror may not be considered without evidence aliunde being introduced first. Id., citing Diehl v. Wilmot Castle Co. (1971),26 Ohio St.2d 249; Lund v. Kline (1938), 133 Ohio St. 317; and Kent v. State (1884), 42 Ohio St. 426, paragraph four of the syllabus. With regard to the affidavit completed by the mitigation specialist, she had no firsthand knowledge of the improper conduct. Her information came from the juror. Thus, the alleged misconduct was not supported by extrinsic, independent evidence by outside sources. This is a violation of the aliunde rule incorporated in Evid.R. 606(B). See, e.g., State v. Jones (Dec. 29, 2000), Hamilton App. No. C-990813 (cannot circumvent the aliunde rule by attaching to the petition for post-conviction relief the affidavit of a criminal investigator who interviewed a juror regarding misconduct during deliberations). Therefore, this argument is without merit.
 {¶ 40} With regard to his eighth ground for relief, appellant argued that Ohio's post-conviction procedure is an inadequate corrective process because indigent prisoners do not have access to traditional discovery mechanisms. Appellant cites three federal circuit cases, which he contends, supports his position that Ohio's post-conviction process is inadequate. However, this exact argument has been rejected numerous times by this and other courts. See, e.g., State v. Scudder (1998),131 Ohio App.3d 470, 478; State v. Coleman, Clark App. No. 2001-CA-42, 2002-Ohio-5377, at ¶¶ 111-112; State v. Hoffner, Lucas App. No. L-01-1281, 2002-Ohio-5201, at ¶ 36; State v. Jackson, Franklin App. No. 01AP-808, 2002-Ohio-3330; and State v. Taylor (June 29, 2001), Greene App. No. 2000 CA 77. This argument is without merit.
 {¶ 41} With regard to his ninth ground for relief, appellant argued that Ohio's death penalty law disproportionately imposes the death penalty upon minorities. The trial court dismissed this argument because appellant is a Caucasian male. Even assuming appellant could bring this claim and it was not prevented by res judicata, we have recently rejected the same argument. See Jackson, supra, at ¶ 92. Therefore, this argument is without merit.
 {¶ 42} With regard to his eleventh ground for relief, appellant argued that the use of lethal injection was cruel and unusual punishment. The Ohio Supreme Court has held that execution by either electrocution or lethal injection does not run afoul of the Eighth Amendment's proscription against cruel and unusual punishment. See State v. Carter (2000), 89 Ohio St.3d 593, 608. Further, the evidence offered in support of this claim was not demonstrably unavailable at the time of trial. This argument is without merit.
 {¶ 43} With regard to his twelfth ground for relief, appellant argued that he received ineffective assistance of counsel during the mitigation phase of his trial because his counsel failed to present relevant evidence in mitigation of the death sentence. Appellant argues that Dr. Burch testified during the mitigation phase of the trial regarding her evaluation of appellant, but appellant's counsel failed to ask Dr. Burch whether appellant's mental status impaired his ability to conform his conduct to the law, which is a mitigation factor under R.C.2929.04(B)(3). However, the Ohio Supreme Court already rejected this argument regarding R.C. 2929.04(B)(3) on direct appeal in Braden, and, therefore, it is barred by res judicata. See Braden, at ¶ 121. Therefore, appellant's sixth assignment of error is overruled.
 {¶ 44} Accordingly, we overrule appellant's six assignments of error and affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
KLATT, J., concurs.
TYACK, J., dissents.