[Cite as *State v. Agee*, 2017-Ohio-7750.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | ) | CASE NO. 14 MA 0094 |
| | ) | |
| PLAINTIFF-APPELLEE | ) | |
| | ) | |
| VS. | ) | OPINION AND |
| | ) | JUDGMENT ENTRY |
| KEVIN D. AGEE, JR. | ) | |
| | ) | |
| DEFENDANT-APPELLANT | ) | |

CHARACTER OF PROCEEDINGS:           Appellant's Motion to Certify a Conflict
                                    Under App.R. 25

JUDGMENT:                           Motion Denied.

APPEARANCES:

For Plaintiff-Appellee:             Atty. Paul J. Gains
                                    Mahoning County Prosecutor
                                    Atty. Ralph M. Rivera
                                    Assistant Prosecuting Attorney
                                    21 West Boardman Street, 6th Floor
                                    Youngstown, Ohio  44503

For Defendant-Appellant:            Atty. Timothy Young
                                    Ohio Public Defender
                                    Atty. Kenneth R. Spiert
                                    Assistant State Public Defender
                                    250 East Broad Street, Suite 1400
                                    Columbus, Ohio  43215

JUDGES:

Hon. Cheryl L. Waite
Hon. Gene Donofrio
Hon. Mary DeGenaro

                                    Dated:  September 21, 2017

PER CURIAM.

{¶1} Appellant Kevin D. Agee, Jr. has filed a motion to certify a conflict to the Ohio Supreme Court. Appellant asks this Court to certify the following question: whether affidavits by legal experts, submitted in postconviction proceedings in support of ineffective assistance of counsel claims, constitute cogent evidence *dehors* the record and defeat the application of *res judicata*. Because judgments cited by Appellant from the Tenth and Second District Courts of Appeals are not in conflict with the decision of this Court, the motion to certify a conflict is denied.

{¶2} App.R. 25(A) reads, in pertinent part:

A motion to certify a conflict under Article IV, Section 3(B)(4) of the Ohio Constitution shall be made in writing no later than ten days after the clerk has both mailed to the parties the judgment or order of the court that creates a conflict with a judgment or order of another court of appeals and made note on the docket of the mailing, as required by App. R. 30(A). * * * A motion under this rule shall specify the issue proposed for certification and shall cite the judgment or judgments alleged to be in conflict with the judgment of the court in which the motion is filed.

{¶3} Article IV, Section 3(B)(4) Article IV, Section 3(B)(4) reads:

Whenever the judges of a court of appeals find that a judgment upon which they have agreed is in conflict with a judgment pronounced upon the same question by any other court of appeals of the state, the judges

shall certify the record of the case to the Supreme Court for review and final determination.

**{¶4}** Hence, the following conditions must be met before and during certification pursuant to Section 3(B)(4), Article IV of the Ohio Constitution:

First, the certifying court must find that its judgment is in conflict with the judgment of a court of appeals of another district and the asserted conflict must be "upon the same question." Second, the alleged conflict must be on a rule of law—not facts. Third, the journal entry or opinion of the certifying court must clearly set forth that rule of law which the certifying court contends is in conflict with the judgment on the same question by other district courts of appeals. (Emphasis deleted.)

*Whitelock v. Gilbane Bldg. Co.*, 66 Ohio St.3d 594, 613 N.E.2d 1032, (1993), paragraph one of the syllabus. In addition, the issue proposed for certification must be dispositive of the case. See, *e.g.*, *State ex rel. Davet v. Sutula*, 131 Ohio St.3d 220, 2012-Ohio-759, 963 N.E.2d 811, ¶ 2.

**{¶5}** This Court provided the following analysis regarding the affidavit submitted in support of Appellant's ineffective assistance of counsel claim:

In order to overcome the *res judicata* bar to his ineffective assistance of counsel claim, Appellant offered the affidavit of Kort Gatterdam, a criminal defense attorney licensed in Ohio. Gatterdam opines that trial counsel was deficient due to their failure to obtain the services of a neuropsychologist and/or neurologist to evaluate Appellant's TBI and

dementia, and the combined effect of these on his ability to knowingly waive his rights to counsel and against self-incrimination. According to Gatterdam, a criminal defense lawyer and former public defender, Appellant's medical records establish cognitive impairments that required the expert testimony of a neuropsychologist or neurologist. Gatterdam Aff., ¶ 7-8. Gatterdam explained that a neurologist could have performed an MRI and used other techniques to "see what was actually going on in [Appellant's] brain at or near the time of his arrest." Gatterdam Aff., ¶ 8.

The trial court concluded that the Gatterdam affidavit offered no new evidence regarding the need for a neurological expert. Gatterdam's affidavit merely offered his opinion on the ultimate question: whether trial counsel's performance was deficient and whether Appellant was prejudiced. The trial court stated that the argument Appellant did not understand his *Miranda* warning was absurd, based on a colloquy between Appellant and the trial court on August 25, 2011, two days after the suppression hearing, where Appellant quoted Albert Einstein. Appellant provided the following testimony at the August 25, 2011 pre-trial conference:

When I first went to jail, I really didn't know the situation I was in and how deep. * * * I was blessed enough to have a family member [Agee's

uncle] actually in the pod when I got there.  He already knows my situation, everything, my brain situation.

The first couple weeks I was in there, I was very frustrated, and he had * * * me read a quote, and he had me write it down and put it in my cell, and I read it every day.  It's by Albert Einstein. * * * ["A] problem can never be solved at the same level of intelligence in which it was created."]  When I finally figured out what my uncle was trying to tell me, he started having me try to understand the constitution[.]

(8/25/11 Tr., pp. 5-6.)

In fact, Ohio appellate districts have consistently concluded that an affidavit by a legal expert does not constitute cogent evidence *dehors* the record sufficient to overcome procedural default.  *State v. Group*, 7th Dist. No. 10 MA 21, 2011-Ohio-6422, ¶ 86-87; *State v. Hill*, 1st Dist. No. C961052 (Nov. 21, 1997) ("Attorney's affidavits explaining prevailing norms do not constitute evidence *dehors* the record and are akin to a notarized legal argument."); *State v. Davis*, 5th Dist. No. 2008-CA-16, 2008-Ohio-6841, at ¶ 161-162 (quoting *Hill* and advocating that instead of a countervailing attorney opinion, a more objective test for attorney ineffectiveness is that set forth in *Strickland*); *State v. Franklin*, 2d Dist. No. 19041, 2002-Ohio-2370, at ¶ 12 ("the affidavit of an attorney giving an opinion based on facts in the record does not

constitute evidence outside the record, but merely legal argument[.]") *Accord State v. Jones*, 11th Dist. No. 2000-A-0083, 2002-Ohio-2074; *State v. Scudder*, 131 Ohio App.3d 470, 722 N.E.2d 1054 (10th Dist.1998); *State v. Lawson*, 103 Ohio App.3d 307, 659 N.E.2d 362 (12th Dist.1995). Accordingly, the trial court correctly concluded that Appellant failed to overcome the procedural bar.

Even assuming that the Gatterdam affidavit constituted valid evidence *dehors* the record, Appellant failed to offer sufficient operative facts to show that trial counsels' failure to request the appointment of a neuropsychologist and/or neurologist resulted in an unfair trial. There is no evidence in the record before us to show that Appellant's cognitive impairments affected his ability to understand the *Miranda* waiver. On the contrary, the record establishes that Appellant was aware of both the effect and the consequences of his confession.

After waving his right to counsel and his right against self-incrimination, Appellant had the presence of mind to deny any involvement in the crime. (DVD Tr., p. 13.) When asked why .308 ammunition and a baseball cap identified by eyewitnesses at the crime scene as being worn by one of the assailants was found at his mother's house, Appellant explained that he and Toney were close friends, and that he let Toney "chill" at the Garfield address. (DVD Tr., pp. 15-16, 21.) He further explained that Toney often left guns and ammunition at the

Garfield address because he considered it a safe place. (DVD Tr., pp. 56, 60-61.) When asked about eyewitness testimony placing him in the vehicle at the crime scene, Appellant stated that he frequently drove around town with Toney, and the eyewitnesses were probably mistaken as to the day they saw them together. (DVD Tr., pp. 18, 32.)

Appellant told police that, when he learned about the crime on the local news, he was disappointed that he did not have any information regarding the crime, because there was a reward offered. (DVD Tr., p. 31.) He did not realize Toney was the shooter until the following day, when friends told him that OB drove a Cadillac that was the same color and model as the vehicle targeted in the drive-by shooting. (DVD Tr., p. 33.) When Detective Sergeant Daryl Martin told Appellant that the Durango was being swept for DNA and prints and asked how Appellant would explain the existence of his fingerprints on the steering wheel, Appellant responded that he drove the Durango a few weeks earlier. (DVD Tr., p. 58.)

Appellant's grandmother spoke to him outside of the presence of the detectives. She informed Appellant that he had been caught on camera, and that he should tell the truth. (DVD Tr., p. 63.) She also informed him that eyewitnesses placed him at the scene of the crime. (DVD Tr., p. 66.) Appellant told his grandmother that he would be looking at "football numbers * * * [b]ig numbers" for jail time. (DVD Tr.,

p. 67.) When his grandmother pressed him to confess, Appellant told her that he was not being stubborn, he was "thinking." (DVD Tr., p. 70.) He observed that he was going to get the same number of years whether he was the driver or the shooter. *Id.*

When Appellant spoke to his mother, he told her that he would receive a high bond and suggested that his girlfriend, whose mother had just died, might have enough money from her mother's estate to provide his bail. (DVD Tr., p. 78.) Agee also told his mother that someone "in the click" was talking, because the detectives had information that eyewitnesses could not have provided. (DVD Tr., p. 83.)

All of the foregoing evidence reveals that Appellant was processing information quite clearly during the police interrogation. He not only provided succinct excuses for the presence of evidence implicating him in the crime, but also recognized the degree of punishment he would face if convicted, as well as the high bond that would likely be assigned. Of equal import, Appellant had entered a guilty plea to charges of drug possession after his automobile accident, so he was also familiar with the state justice system.

Appellant has failed to offer evidence *dehors* the record in support of his right to counsel and due process claims regarding the appointment of a neuropsychologist and/or neurologist, which could have been

raised on direct appeal. In the alternative, Appellant has failed to offer evidentiary material setting forth sufficient operative facts to demonstrate a reasonable probability that a neurological expert would have aided his defense, and that the denial of expert assistance resulted in an unfair trial. Accordingly, Appellant's first assignment of error based on claims of ineffective assistance of counsel is overruled.

*State v. Agee*, 7th Dist. No. 14 MA 0094, 2016-Ohio-7183, ¶ 28-37.

**{¶6}** Appellant contends that three Ohio appellate cases, *State v. Dumas*, 10th Dist. No. 99AP-853, 2000 WL 518555, *State v. McDaniel*, 2d Dist. No. 97-CA-7, 1997 WL 691508, and *State v. Hooks*, 2d Dist. No. CA 16978, 17007, 1998 WL 754574, are in conflict with the judgment in this case. However, on closer examination, the Tenth and Second District Courts of Appeals reach the identical conclusion regarding expert legal affidavits submitted to overcome the procedural bar in postconviction proceedings.

**{¶7}** In *State v. Dumas*, the petitioner offered two affidavits in support of his ineffective assistance of counsel claim based on his trial counsel's failure to raise a speedy trial violation. First, he offered the affidavit of his trial counsel, Rogers, in which Rogers stated that he was not aware the speedy trial clock had run, and that his failure to assert the speedy trial violation was not a trial tactic. Next, Dumas offered the affidavit of his pre-trial attorney, Nowland, in which Nowland stated that he would have raised the speedy trial violation and that Rogers' failure to raise any objection was unreasonable.

{¶8} The Tenth District Court of Appeals held that Rogers' affidavit constituted evidence *dehors* the record sufficient to overcome the *res judicata* bar in a postconviction proceeding. Distinguishing *State v. Hill*, supra, the Tenth District wrote, "Rogers' affidavit is not a legal argument but, rather, a statement that, since assertion of the speedy trial claim would have resulted in dismissal of four felonies, the failure to assert it was not a matter of trial strategy. This evidence was not part of the original record and could not have been considered by this court or the trial court." *Dumas* at *4.

{¶9} The decision in *Dumas* does not conflict with the judgment in this case. The *Dumas* panel held that trial counsel's affidavit constituted evidence *dehors* the record because it established operative facts surrounding counsel's failure to raise the speedy trial violation. The Tenth District did not reach the same conclusion regarding the Nowland affidavit, and it is significant that the *Dumas* panel did not consider the Nowland affidavit in its legal analysis. In actuality *Dumas* appears to apply the holding in *Hill, supra*, to the Nowland affidavit.

{¶10} The Second District Court of Appeals cases, *McDaniel* and *Hooks, supra*, specifically address the submission of expert legal affidavits in support of ineffective assistance of counsel claims based on the failure of counsel to call lay and expert witnesses. These cases also support rather than conflict with the judgment of this Court. In both, the Second District held that ineffective assistance of counsel claims predicated on the failure to call lay and expert witnesses "must be determined *dehors* the record." *Hooks* at *16, quoting *McDaniel* at *3. However, the Second

District recognizes in each case that expert legal affidavits that are conclusory in nature do not constitute evidence *dehors* the record. Both panels held that, in order to overcome the procedural bar, expert legal affidavits must contain operative facts. *McDaniel* at \*5; *Hooks* at \*15 ("In this case, Hooks fails to suggest how the testimony of another pathologist would rebut the testimony of the coroner. He also fails to state how, or even if, he was prejudiced by the failure to call a pathologist.")

{¶11} In the case before us, Gatterdam's affidavit, stating that trial counsel provided ineffective assistance based upon their failure to seek the appointment of a neuropsychologist and/or neurologist, did not contain operative facts, but, instead, constituted notarized legal argument. *Agee* at ¶ 30, quoting *Hill, supra*. The Second District reached the same conclusion with regard to the affidavits in *McDaniel* and *Hooks*.

{¶12} In summary, all three of the Ohio appellate court decisions cited by Appellant stand for the proposition that a conclusory legal affidavit containing no operative facts does not constitute evidence *dehors* the record. Consequently, this affidavit cannot overcome the *res judicata* bar in postconviction proceedings. No conflict exists with this case, and Appellant's motion to certify conflict to the Ohio Supreme Court is denied.

Waite, J., concurs.

Donofrio, J., concurs.

DeGenaro, J., concurs.